DANIELS & DANIELS, LLC
6812 Park Avenue
Guttenberg, New Jersey 07093
(201) 868-1868 (T)
(201) 868-2122 (F)



CLERK
U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY
RECEIVED

2017 JUL -5  A 11: 06

*Attorneys for Plaintiff Overseas Lease Group, Inc.*

PAUL BATISTA, P.C.
26 Broadway, Suite 1900
New York, New York 10004
(212) 980-0070 (T)
(212) 344-7677 (F)

– Of Counsel –

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| OVERSEAS LEASE GROUP, INC., <br><br> Plaintiff, <br><br> v. <br><br> PLOCHER CONSTRUCTION COMPANY, INC. and SCOTT PLOCHER, <br><br> Defendants | Civil Action No. <br><br> **Jury Trial Demanded** |

### COMPLAINT

Plaintiff Overseas Lease Group, Inc. ("OLG"), by and through its attorneys, respectfully alleges for its Complaint against defendants as follows:

### Introduction

1. As described more fully in the balance of this Complaint, this is an action against the named defendants as a consequence of their illegal scheme to deprive plaintiff, a New Jersey-based company, of millions of dollars of revenue and profit through a course of conduct by defendants beginning in 2014 and continuing to the present. The corporate defendant, which is a

major construction company, and the individual defendant, who controlled and still controls the corporate defendant, engaged in sustained manipulative conduct to destroy the vested property, business and contractual interests of plaintiff in a municipal contract involving waste water management in Terre Haute, Indiana.

2. Acting in concert with the most prominent public officials of the City of Terre Haute, including Duke Bennett ("Bennett"), the City's Mayor, the corporate and individual defendants directly participated in prolonged, complex and highly secretive efforts (i) to freeze OLG out of the crucial de-watering phase of the massive waste water management contract so that the defendants could seize the business opportunities plaintiff had created, (ii) to force OLG to sacrifice hundreds of thousands of dollars in out-of-pocket investments and expenses it had made to support and facilitate the contract with the City, (iii) to take for defendants' own benefit OLG's property and business interests in the project and plaintiff's reasonable expectation of hundreds of millions of dollars in revenue and profit, and (iv) to destroy plaintiff's business.

3. The corporate and individual defendants' conduct involved, upon information and belief, multiple secret and illicit communications with the highest officials of the City of Terre Haute, including its Mayor, in a "pay to play" arrangement, as well as corrupt bribery activity in which OLG refused to participate involving, among others, Mark Thompson ("Thompson"), the director of a major Terre Haute public agency.

## Jurisdiction and Venue

4. This action arises under principles of diversity jurisdiction contained in 28 U.S.C. §1332 and supplemental jurisdiction.

5. Venue is proper in this District pursuant to 28 U.S.C. §1391.

## Statement of Facts Common to All Counts

### A. The Parties and Governmental Non-Parties

6. Plaintiff OLG, a corporation organized and existing under the laws of the State of Delaware, has at all relevant times maintained its principal place of business in New Jersey. OLG is engaged in the business of leasing commercial and industrial equipment.

7. Scott Plocher is an Illinois corporation engaged in the business of general construction. Its promotional materials state that it is interested in, capable of, and has in fact engaged in, construction projects in many areas of the United States.

8. Upon information and belief, Defendant Scott Plocher ("S. Plocher") is a resident of Illinois,

9. The City of Terre Haute (the "City"), a non-party, is an Indiana municipal corporation.

10. The City of Terre Haute Wastewater Utilities (the "Utilities"), a non-party, and the Board of Public Works and Safety (the "Board"), another non-party, are subdivisions of the City.

11. Non-party Bennett is the Mayor of Terre Haute, and non-party Thompson is the Director of Utilities.

12. Other relevant non-parties who were officials of the City included Chou-il Lee ("Lee"), the Corporation Counsel and principal attorney of the City at all relevant times.

3

**B.**  **The July 2014 Agreement**

13. The City, the Utilities, the Board and non-party Powerdyne Terre Haute Holdings LLC ("Powerdyne") entered into a Purchase and Sale Agreement dated July 15, 2014 (the "Underlying Agreement").

14. Pursuant to the Underlying Agreement, the City, the Utilities, and the Board contracted to buy renewable diesel fuel from Powerdyne and to deliver waste activated sludge and other biological material to Powerdyne to produce the diesel fuel. *See* the Underlying Agreement §§ 4.1 and 4.4. An essential necessary step in producing renewable diesel fuel is the removal of the water from the waste activated sludge through centrifugation, a process known as "de-watering." *See* Agreement § 4.4 and Addendum I.

15. The City, the Utilities and the Board agreed to 240 consecutive monthly payments of $719,326.58 for de-watering services. *See* Underlying Agreement, Addendum I.

16. Given these provisions, over the course of the twenty (20) year de-watering agreement, OLG projected that it would earn $80 million to $89 million. OLG in addition projected earning lease fees of $600,000 to $800,000 during the twenty (20) year term of the de-watering contract, which collapsed as a consequence of defendants' misconduct before OLG was paid anything.

**C.**  **The Role of the Parties and Non-Parties**

   **(i)**  **The Assignment, the Lease and the Plocher Contract**

17. The parties to the Underlying Agreement later assigned the rights and delegated the obligations concerning de-watering from Powerdyne to Highland TH, LLC ("Highland"), which since November 2014 has been a subsidiary of OLG. The assignment is

4

reflected in the Partial Assignment and Delegation of Purchase and Sale Assignment dated November 20, 2014 (the "Assignment").

18. Highland and the Utilities entered into a Lease Agreement dated May 15, 2014, under which Highland agreed to lease from the City facilities where the de-watering operation was to take place (the "Lease").

19. Defendant Plocher and Highland on October 27, 2014, executed an agreement (the "Plocher Contract") for construction services relating to the de-watering project.

20. In October 2014, the Chief Executive Officer of OLG, E. George Badcock, III, was invited by Bennett and Thompson to Terre Haute to discuss the de-watering project. OLG had not previously been aware either of the City's waste water project or the defendants. In response to that invitation, a meeting attended by Thompson, defendant S. Plocher, Mr. Badcock and Geoff Hirson, the President of Powerdyne, took place in October 2014.

### (ii) The "Pay-to-Play" Scheme

21. During the course of the meeting in October 2014, Thompson, a public official, suggested that OLG become involved in an on-going bribery arrangement and a related "pay-to-play" arrangement under which Thompson and, upon information and belief, other public officials personally received significant amounts of cash and other benefits from private entities, including Powerdyne, doing business with the City and its subdivisions. Since 2012, Plocher has been engaged in continuous municipal contracts in Terre Haute.

22. More specifically, Mr. Badcock, in sworn deposition testimony, has described the operation, in part, of the bribery scheme: "I was approached [at the October 2014 meeting attended by S. Plocher] by Mr. Thompson, [who] asked if I was going to be participating in the cash payment . . . to Mr. Thompson, if I was going to participate in that and I told him I

wasn't involved with paying people money. Thompson wanted to know if his quote/unquote 'package' was going to continue and I said I have nothing to do with that."

23.   Upon information and belief, defendants Plocher and S. Plocher, who was present at the October 2014 meeting at which Thompson suggested the payment of a bribe from OLG, have made substantial contributions to Bennett's political campaigns in an effort corruptly to obtain favorable treatment from Terre Haute and its subdivisions.

### (iii)   The Misrepresentations

24.   On multiple additional occasions in late 2014 and early 2015, Thompson spoke in person with Mr. Badcock and other representatives of OLG concerning the Underlying Agreement and the commitment by the City, the Utilities, and the Board to contract with as many as one hundred (100) other municipalities which would compensate the City for the processing of the other municipalities' waste water.

25.   Thompson repeatedly stated that other cities had entered into waste water supply agreements with the Utilities and that the other cities would provide a sufficient revenue stream to ensure the City, the Utilities, the Board and Plocher could perform the Underlying Agreement. Thompson provided spreadsheets to representatives of OLG concerning the projected revenue. Bennett and Thompson knew, or had compelling reasons to know, these representations were lies.

26.   Likewise, upon information and belief, Plocher, which has had major municipal contracts with Terre Haute since 2012 and for years has made illicit campaign contributions to Terre Haute officials, had compelling reasons to know, or should have known, of the lies and misrepresentations identified in ¶¶ 24 and 25, *supra*.

27. Based on Thompson's representations, Highland drafted a pro forma to present to the Terre Haute City Council.

28. When Highland entered into the Underlying Agreement, the Assignment, the Lease, and the Plocher Contract, Highland was wholly owned by Powerdyne. OLG at that point had no relationship with Powerdyne or Highland.

#### (iv) OLG's Involvement in the Project

29. In reliance on Thompson's, Bennett's and the City's misrepresentations, lies, and failures to disclose material facts, OLG acquired Highland from Powerdyne in November 2014. OLG also based its decision to purchase Highland and enter into the assignment of the Plocher Contract on the opinion letter of Lee, in his capacity as the City's Corporation Counsel and principal attorney, that all the relevant contracts were valid and binding.

30. In December 2014, OLG accepted Highland's obligations under the Plocher Contract to purchase, install, and test the de-watering plant.

31. After making substantial investments in the de-watering facility, Highland was prepared to begin operating the facility on or around December 20, 2014.

32. The City, the Utilities, and the Board, however, never delivered waste activated sludge to the de-watering facility.

33. The City, the Utilities and the Board never made a payment to Highland or OLG.

34. Defendant Plocher has continuously insisted on receipt of payment from OLG under the Plocher Contract notwithstanding the fact that OLG and Highland have never received any payments whatsoever from Terre Haute or any other source with which to make payments to Plocher.

35.     As defendants knew, Plocher was not entitled to payment by OLG unless and until the City and other government entities or private entities supplied OLG with funding from which to pay Plocher. Defendants were fully aware of the fact that OLG never had the resources of its own to make the payments under the Plocher Contract and defendants knowingly assumed the risk that the government might not pay OLG and OLG might not be able to enter into funding arrangements with private entities.

36.     Representatives of Highland and OLG engaged in ongoing discussions with Bennett and Thompson beginning in November 2014 through May 2015 to determine whether the City, the Utilities, and the Board would honor their contractual commitments, the validity of which Lee, as the City's Corporation Counsel, had unequivocally confirmed. In the final analysis, the City, the Utilities and the Board *never* made a single payment of their contractually obligated commitments.

37.     Bennett, Thompson and Lee repeatedly stated that the Underlying Agreement and Assignment were valid contractual obligations that the City, the Utilities, and the Board would honor.

38.     Defendants were fully aware of and, upon information and belief, encouraged and solicited these misrepresentations to OLG.

39.     In reliance on the false representations, OLG and Highland continued to incur costs to prepare and maintain the de-watering facility.

### *(v)     The Secret Dealings Between the City and the Defendants*

40.     Among other things, the City, on March 23, 2015, using its structural engineer as an intermediary, secretly contacted Plocher and offered to purchase all the de-watering equipment owned by OLG and installed in the OLG-leased building.

8

41. On March 23, 2015, defendants Plocher and S. Plocher, in response to the City's overture, confirmed that the de-watering equipment was owned by OLG.

42. In complete derogation of OLG's rights, defendants Plocher and S. Plocher failed to notify OLG of the City's offer to purchase the OLG-owned equipment and Plocher, on its own and without informing OLG, negotiated to sell OLG's equipment to the City.

43. Defendants Plocher and S. Plocher owed fiduciary duties to OLG that obligated defendants to place OLG's interests before any interest of defendants. At no point, however, did Plocher and S. Plocher ever honor or comply with those contractual and common law obligations.

44. Also in complete violation of OLG's rights, Plocher was paid several million dollars for the de-watering equipment owned by OLG, and the OLG-owned equipment was dismantled and removed from OLG's building.

45. By refusing to disclose any material information to OLG, defendants' conduct prevented and interfered with OLG's ability to negotiate with the City, Bennett, Thompson, the Utilities, and the Board. This foreclosed OLG's ability to reach a resolution of the overall issues that would have protected Plocher's interests.

46. In May 2015, the City, the Utilities, and the Board repudiated the Underlying Agreement and the Assignment, contending that neither was valid.

### (vi)   Defendants' Breaches

47. By selling plaintiff's equipment to the City without justification and at artificially low prices, Plocher intentionally induced the City's, the Utilities' and the Board's breach of their contracts with Highland and OLG.

48. Moreover, defendants, in derogation of Plocher's explicit fiduciary obligations to OLG, deliberately excluded OLF from negotiations with Terre Haute and its officials and finalized a transaction with Terre Haute that was highly detrimental to OLG's interests.

49. Plocher's intentional conduct has caused OLG, as sole owner of Highland, to suffer substantial damages. Those damages include, among other things, the expenses OLG incurred to perform its and Highland's obligations and the losses associated with the many millions of dollars of revenue and profits OLG would have earned had the City, the Utilities, and the Board performed their obligations.

50. Acting at the direction of S. Plocher, defendant Plocher initiated arbitration proceedings against OLG seeking to recover approximately $2.4 million. The arbitration proceeding was an integral part of the scheme to defraud OLG. The arbitration resulted in an award of several hundred thousand dollars of unjustifiable damages against OLG.

51. In further violation of their duties, defendants on March 14, 2017 initiated in the United States District Court for the Eastern District of Missouri a fraudulent litigation to confirm the arbitration award.

52. Defendants knew that the Missouri courts lacked both personal and *in rem* jurisdiction over OLG. Defendants' selection of Missouri was part of a pattern of conduct to harass and burden OLG and violate OLG's rights. Among other things, defendants' wrongful selection of Missouri was based on the fact that one of defendants' lawyers, who have their only office in Illinois, is also admitted in Missouri; this fact excused defendants from having to incur the expense of engaging local counsel in Missouri.

53. Since the Court in Missouri lacked any type of jurisdiction over OLG, OLG did not appear in the litigation which defendants filed in Missouri.

54. On May 19, 2017, the District Court in Missouri, despite the fact that it did not have any jurisdiction over OLG, erroneously confirmed the arbitration award and entered a judgment of approximately $1 million, inclusive of interest, against OLG on May 25, 2017.

## Count I

55. Plaintiff repeats and realleges each and every allegation of §§ 1-54 *supra*.

56. Under the Plocher Contract, defendants Plocher and S. Plocher were designated as "fiduciaries" of OLG. More specifically, the Plocher Contract provided that

> [Plocher] accepts the relationship of trust and confidence established by this Agreement and covenants with [OLG] to cooperate with [OLG] and exercise [Plocher's] skill and judgment in furthering the interests of [OLG] . . . and to perform the Work in an expeditious and economical manner consistent with [OLG's] interests.

57. Defendants repeatedly violated their fiduciary duties to OLG, as described in greater detail earlier in this Complaint.

58. By reason of their misconduct, Plocher and S. Plocher have damaged OLG in an amount to be determined by a jury at trial but believed to exceed $89 million.

## Count II

59. Plaintiff repeats and realleges each and every allegation of §§ 1-58 *supra*.

60. Plocher and S. Plocher owed independent contractual and common law fiduciary duties to OLG which defendants repeatedly and consistently violated, as described in greater detail earlier in this Complaint.

61. By reason of their breaches of their fiduciary duties, Plocher and S. Plocher have damaged OLG in an amount to be determined by a jury at trial but believed to exceed $89 million.

## Count III

62. Plaintiff repeats and realleges each and every allegation of §§ 1-61 *supra*.

63. As described in greater detail earlier in this Complaint, OLG and Highland had contracts with the City, the Utilities, and the Board with which defendants intentionally interfered.

64. By reason of the foregoing, defendants Plocher and S. Plocher have damaged OLG in an amount to be determined by a jury at trial but believed to exceed $89 million.

## Count IV

65. Plaintiff repeats and realleges each and every allegation of §§ 1-64 *supra*.

66. As described in greater detail earlier in this Complaint, defendants interfered in OLG's business relations with the City, the Board, the Utilities and others.

67. By reason of the foregoing, defendants have damaged OLG in an amount to be determined by a jury at trial, but believed to exceed $89 million.

## Count V

68. Plaintiff repeats and realleges each and every allegation of ¶¶ 1-67 *supra*.

69. Defendants, by selling property and equipment owned by OLG, converted that property and equipment to themselves and have damaged OLG in an amount to be determined at trial but believed to exceed $5 million.

## Count VI

70. Plaintiff repeats and realleges each and every allegation of ¶¶ 1-69 *supra*.

71. OLG could perform under the Plocher Contract only to the extent that the City, the Board and the Utilities made the payments required pursuant to the Underlying Agreement and the Lease and/or from private or public funding sources.

72.     At the time of the assignment of the Plocher Contract, defendants knew that it would be impossible for OLG to make payments to Plocher unless the City, the Utilities and the Board made the payments to OLG that they were required to make or OLG obtained funding from public or private financing sources.

73.     As described in greater detail earlier in this Complaint, none of the entities which were required to pay OLG ever made a single payment to OLG.

74.     By reason of the foregoing, the Court should enter an order vacating and annulling the Plocher Contract *ab initio* because of the existence of a material mistake of fact and/or impossibility of performance. In the absence of required payments to OLG, as defendants fully knew, OLG had no resources of its own to make payments to Plocher.

Dated:  June 21, 2017

DANIELS & DANIELS, LLC

By: _____
John A. Daniels

PAUL BATISTA, P.C.
26 Broadway, Suite 1900
New York, New York 10004
(212) 980-0070 (T)
(212) 344-7677 (F)
Batista007@aol.com
  – Of Counsel –