DANIELS & DANIELS, LLC
6812 Park Avenue
Guttenberg, New Jersey
(201) 868-1868 (T)
(201) 868-2122 (F)
JOHN A DANIELS ESQ ID # 045721992
*Attorneys for Plaintiffs Overseas Lease Group, Inc.,*
*E. George Badcock, III and Highland TH, LLC*

PAUL BATISTA, P.C.
26 Broadway, Suite 1900
New York, New York 10004
(212) 980-0070 (T)
   – *Of Counsel* –

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| OVERSEAS LEASE GROUP, INC.; E. GEORGE BADCOCK, III; and HIGHLAND TH, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>PLOCHER CONSTRUCTION COMPANY, INC.; SCOTT PLOCHER; THE CITY OF TERRE HAUTE; THE CITY OF TERRE HAUTE WASTE WATER UTILITIES; BOARD OF PUBLIC WORKS AND SAFETY; TERRE HAUTE DEWATERING COMPANY, LLC, and M. NOAH SODREL,<br><br>Defendants. | Civil Action No. 2:17-04917 (JMV) (MF)<br><br><br><br><br><br><br>*AMENDED COMPLAINT*<br><br><br>**Jury Trial Demanded** |

Plaintiffs Overseas Lease Group, Inc. ("OLG"), a corporation organized and existing under the laws of Delaware with its principal place of business in Parsippany, New Jersey, E. George Badcock, III, and Highland TH, LLC ("Highland TH"), by and through their attorneys, for their Amended Complaint against defendants allege as follows:

## Introduction and Summary

1. At its core, this litigation involves a stunning pattern of fraudulent and deceptive conduct by a major Indiana city, The City of Terre Haute ("Terre Haute"); its municipal agencies; the Mayor of Terre Haute; prominent officials within the Terre Haute government; and a host of private parties which for a period of years have repeatedly engaged, among other things, in multiple deceptive acts and practices that resulted in devastating direct injury to the business and property interests of plaintiffs OLG, Mr. Badcock, who at all relevant times has owned OLG, and OLG's subsidiary since November 2014, Highland TH, to the extent of approximately $87 million.

2. The conduct of the named defendants and other crucial participants not currently named in this action, including, among others, Duke Bennett ("Mayor Bennett"), who at all relevant times has been the Mayor of Terre Haute, has in recent weeks attracted the attention of the United States Federal Bureau of Investigation ("FBI"), which has, among other things, executed extensive search warrants to obtain evidence as to the misconduct of the named defendants and the current non-party participants, including Mayor Bennett, with respect to Terre Haute's putative wastewater treatment projects. Among other things, the on-going federal investigation relates, upon information and belief, to public corruption events and misconduct identified in this Amended Complaint with respect to defendants Plocher Construction Company, Inc. ("Plocher") and Scott Plocher ("S. Plocher").

3. Indeed, a former high-ranking city official who was an intimate associate of Mayor Bennett and defendant S. Plocher himself, committed suicide soon after the FBI executed search warrants at the official's relevant municipal offices and elsewhere and, upon information and belief, after a federal grand jury was convened to investigate issues of public

corruption involving Terre Haute officials and private parties, such as defendants Plocher and S. Plocher

    4. Significantly, the suicide of the former municipal official did *not* deter, pause or halt federal law enforcement's investigation of the conduct of Terre Haute, its leading executives such as Mayor Bennett, its agencies named as defendants, and the private entities and persons specifically named as defendants in this Amended Complaint, including Plocher and S. Plocher – a pattern of illegal conduct that severely and directly injured plaintiffs OLG, Mr. Badcock and Highland TH. The continued federal investigation has proceeded since the recent suicide even after Mayor Bennett and the current Corporation Counsel of Terre Haute (1) publicly and falsely proclaimed that the sole target of the investigation was the official who committed suicide and (2) stated without any basis in fact that the federal investigation would end with the official's tragic death. Indeed, the federal criminal investigation has not ended and continues, extending, upon information and belief, to defendants Plocher and S. Plocher, as well as to defendant Terre Haute Dewatering Company LLC ("THDC"), a private entity owned and controlled by defendant M. Noah Sodrel ("N. Sodrel"), for, *inter alia*, the suspicious payment of $750,000 in April 2015 to Terre Haute that, among other things, wrongfully purported to repudiate the government defendants' relationship with plaintiffs.

## Jurisdiction and Venue

    5. Jurisdiction in this District is predicated on the principles of diversity jurisdiction and supplemental jurisdiction contained in 28 U.S.C. §1331, 28 U.S.C. §1332 and 28 U.S.C. §1367.

    6. Venue is proper in this District under 28 U.S.C. §1391(b).

## Parties and Non-Parties

7. Plaintiff OLG has for at least two decades been engaged in the business of providing complex leasing services to a broad array of United States entities, foreign countries, and non-governmental organizations, among others. OLG is incorporated and organized under the laws of Delaware. Its principal place of business is located in New Jersey.

8. Plaintiff Highland TH is a Delaware limited liability company acquired by OLG in November 2014.

9. Plaintiff Mr. Badcock is a citizen of Florida. He serves as the President and Chief Executive Officer of plaintiff OLG.

10. Defendant Plocher is an Illinois corporation engaged in the business of general construction. Its promotional materials state that it is interested in, capable of, and has in fact engaged in construction projects in several areas of the United States, including since October 2012 in the major construction projects in Terre Haute at issue in this litigation.

11. Defendant S. Plocher is a citizen of Illinois who engaged in his individual capacity and for his personal benefit in the corrupt events at issue in this litigation.

12. Defendant Terre Haute is an Indiana municipal corporation and, as a consequence, a citizen of Indiana.

13. Defendant The City of Terre Haute Wastewater Utilities ("Terre Haute Wastewater Utilities"), an agency and subdivision of Terre Haute, is a citizen of Indiana.

14. Defendant Board of Public Works and Safety (the "Terre Haute Board") is, upon information and belief, an agency and subdivision of Terre Haute created under Indiana law and controlled by Terre Haute and Mayor Bennett. The Terre Haute Board is a citizen of Indiana.

15. At all relevant times, non-party Mayor Bennett has served as the Mayor of Terre Haute. He is a resident and citizen of Indiana.

16. Defendant THDC is an Indiana limited liability company owned and controlled by defendant N. Sodrel. Defendant THDC is a citizen of Indiana.

17. Defendant N. Sodrel is a citizen of Indiana.

### Statement of Facts Common to All Counts

A. **The July 2014 Agreement**

18. Defendants Terre Haute, Terre Haute Wastewater Utilities, the Terre Haute Board and non-party Powerdyne Terre Haute Holdings LLC ("Powerdyne") entered into a Purchase and Sale Agreement dated July 15, 2014 (the "Underlying July 2014 Agreement").

19. Pursuant to the Underlying July 2014 Agreement, Terre Haute, the Terre Haute Wastewater Utilities, and the Terre Haute Board contracted to buy renewable diesel fuel from Powerdyne and to deliver waste activated sludge and other biological material to Powerdyne to produce diesel fuel. An essential step in producing renewable diesel fuel is the removal of the water from the waste activated sludge through centrifugation, a process known as "de-watering."

20. Terre Haute, the Terre Haute Wastewater Utilities and the Terre Haute Board agreed to 240 consecutive monthly payments of $719,326.58 for de-watering services, aggregating approximately $172 million for the entire term of the Underlying July 2014 Agreement.

21. In fact, at the time the Underlying July 2014 Agreement was executed, defendant Terre Haute and the other municipal defendants knew they did not have the funds, and had no reasonable or fact-based expectation of ever having the funds, to fulfill any of their contracted commitments. The Underlying July 2014 Agreement was as result a deliberate sham.

22. Similarly, non-party Powerdyne at the time it executed the Underlying July 2014 Agreement through its President, Geoffrey Hirson ("Hirson"), was a shell entity with

no business, no assets, few, if any, employees, and no capacity or reasonable expectation of any capacity to fulfill its putative commitments under the contract. In effect, Powerdyne like Terre Haute and the municipal agencies was a participant in a contract and transaction which the parties knew was a sham at the time they created it.

23. When the Underlying July 2014 Agreement was executed, OLG and Mr. Badcock had no knowledge of the existence of the contract or of any contemplated wastewater treatment project in Terre Haute.

B. **The Perpetuation of Defendants' Deceit on Plaintiffs**

(i) **The Assignment, the Lease and the Plocher Contract**

24. Through multiple acts of fraud, deceit and misrepresentation, the parties to the Underlying July 2014 Agreement later assigned the rights and delegated the obligations concerning de-watering from Powerdyne to Highland TH, which had previously been owned by Powerdyne and since November 2014 has been a subsidiary of OLG. The assignment is reflected in a contract dated November 20, 2014 (the "Assignment"), procured through deceit by Powerdyne, the municipal defendants and defendants Plocher and S. Plocher to inflict harm on Highland TH and OLG.

25. At a time when it was owned by Powerdyne (an entity whose office was in a car wash, a fact not known by OLG at any relevant point), Highland TH and the Terre Haute Wastewater Utilities entered into a Lease Agreement dated May 15, 2014, under which Highland TH agreed to lease from Terre Haute facilities where the de-watering operation was allegedly to take place (the "Lease"). Like all other aspects of defendants' conduct, the assignment of the Lease was a deliberate element of the pervasive fraud, manipulation and deceit calculated by the governmental defendants and Mayor Bennett, acting in concert with Plocher and S. Plocher, to harm and injure plaintiffs.

6

26.  In November 2014, Mr. Badcock, the Chief Executive Officer of OLG, was invited by Mayor Bennett and Mark Thompson ("Thompson"), a Terre Haute executive, to Terre Haute to discuss the de-watering project. OLG had not previously been aware either of Terre Haute's wastewater project or the defendants. In response to that invitation, a November 5, 2014 meeting took place attended by Thompson, defendant S. Plocher, Mr. Badcock and Hirson, the Chief Executive Officer of Powerdyne. (Thompson, the close associate of S. Plocher and Mayor Bennett, was the person who recently committed suicide after the FBI executed extensive search warrants for Thompson's documents and records and the documents and records of other parties and current non-parties.)

### (ii)  The "Pay-to-Play" Scheme

27.  During the course of the initial meeting on November 5, 2014, the public official who later committed suicide suggested that OLG become involved in an on-going bribery arrangement and a related "pay-to-play" scheme under which Thompson and, upon information and belief, other public officials, including Mayor Bennett, personally received significant amounts of cash and other benefits from private entities and individuals, including Powerdyne and Plocher and S. Plocher, in order to engage in business with Terre Haute and its subdivisions. Since 2012, Plocher has performed continuous municipal contracts in Terre Haute and consistently provided funds to or for the benefit of Mayor Bennett.

28.  More specifically, Mr. Badcock, in sworn deposition testimony, has described the operation of the bribery scheme: "I was approached [at the November 5, 2014 meeting attended by S. Plocher] by Mr. Thompson, [who] asked if I was going to be participating in the cash payment . . . to Mr. Thompson, if I was going to participate in that and I told him I wasn't involved with paying people money. Thompson wanted to know if his quote/unquote 'package' was going to continue and I said I have nothing to do with that."

29. Upon information and belief, defendants Plocher and S. Plocher, who was present at the November 5, 2014 meeting at which Thompson solicited the payment of bribes from OLG, have made substantial contributions to Mayor Bennett's political campaigns in an effort corruptly to obtain favorable treatment from Terre Haute and its subdivisions. Those corrupt payments by Plocher and S. Plocher have had their intended illegal results: among other things, since 2012, defendants Plocher and S. Plocher have consistently been awarded highly lucrative contracts by Terre Haute and been allowed to conduct secret negotiations and conclude contracts with Terre Haute which have had the impact of destroying OLG and depriving plaintiffs of *all* the revenue which plaintiffs in good faith expected to derive from their contracts with Terre Haute.

30. As a further step in the campaign of fraud and deceit against plaintiffs, defendant Plocher and Highland TH on October 27, 2014, executed an agreement (the "Plocher Contract") for construction services relating to the de-watering project. Defendants Plocher and S. Plocher fraudulently induced this agreement. If the truth had been disclosed by Plocher and S. Plocher rather than concealed by them, plaintiffs would never even have considered entering into the bogus Plocher Contract, the central purpose of which was to defraud and cheat plaintiffs.

### (iii)   The Additional Misrepresentations

31. On multiple additional occasions in late 2014 and early 2015, Thompson spoke in person with Mr. Badcock and other representatives of OLG concerning the Underlying July 24 Agreement and the totally fictionalized commitment by the governmental defendants to contract with as many as one hundred (100) other municipalities which would allegedly compensate Terre Haute for the processing of the other municipalities' wastewater. As defendants, including Plocher and S. Plocher knew, these utterly false representations were designed to secure OLG's provision of financing to the municipal defendants, Plocher and S.

Plocher without any possibility that plaintiffs would earn a dime from any of the elaborate schemes devised by defendants.

32. Thompson and other municipal officials of Terre Haute including Mayor Bennett, as well as defendants Plocher and S. Plocher, repeatedly stated that other cities had entered into wastewater supply agreements with Terre Haute and that at least 100 other municipalities would provide a sufficient revenue stream to ensure that Terre Haute could perform the Underlying July 24 Agreement, the Lease, and the bogus Plocher Contract. Among other things, Thompson and the Terre Haute City Controller's Office provided falsified revenue spreadsheets to representatives of OLG concerning the projected revenue. Mayor Bennett, Thompson and others knew, or had compelling reasons to know, these representations were lies. Yet OLG completely relied on the oral and written representations of Terre Haute and its officials as to anticipated revenue from the alleged wastewater supply agreements with other cities.

33. Likewise, upon information and belief, S. Plocher and Plocher, which has had major municipal contracts with Terre Haute since 2012 and for years has made illicit campaign contributions to Terre Haute officials, had compelling reasons to know, or should have known, of the lies and misrepresentations identified in this Amended Complaint.

34. At all relevant times Plocher and S. Plocher knew that the Plocher Contract, the related Lease, the Underlying July 2014 Agreement and the Assignment were a scam calculated to steal money from OLG, Mr. Badcock and Highland TH for the purpose, among other things, or enriching defendants Plocher and S. Plocher with money provided by OLG.

35. When Highland TH entered into the Underlying July 2014 Agreement, the Assignment, the Lease, and the Plocher Contract, Highland TH was wholly owned by

Powerdyne. OLG at that point previously had no relationship with Powerdyne or Highland TH, nor were plaintiffs informed that Powerdyne was a shell corporation, the sole purpose of which was to participate in the massive fraudulent scheme created by Mayor Bennett, Thompson, Hirson, Plocher, S. Plocher and others to extract millions of dollars from OLG with no prospect that either OLG, Mr. Badcock or Highland TH would *ever* receive a cent of revenue in return. And the pervasive scheming of the named defendants and non-parties was entirely successful: notwithstanding their good faith and the hundreds of thousands of dollars of expenses they incurred, plaintiffs have received nothing.

### (iv) OLG's Involvement in the Project

36. In reliance on Thompson's, Mayor Bennett's and Terre Haute's misrepresentations, lies, and failures to disclose material facts, OLG acquired Highland TH from Powerdyne in November 2014. OLG based its decision to purchase Highland TH and enter into the assignment of the Plocher Contract on the basis of the November 24, 2014 opinion letter of Chou-Il Lee ("Lee"), in his capacity as Terre Haute's Corporation Counsel and principal attorney, that all the relevant contracts were valid and binding on Terre Haute and the private party defendants. Lee's official written opinion was clear, unequivocal and a crucial element of OLG's evolving, expensive and good faith effort that resulted into its being lured into a scam of astounding dimensions of which OLG was the victim.

37. Moreover, in December 2014, relying on the false representations identified in this Amended Complaint, OLG accepted Highland TH's obligations under the Plocher Contract to purchase, install, and test the de-watering plant. This step was yet another key element of the underlying scheme to defraud in which Plocher and S. Plocher engaged with Mayor Bennett, the municipal defendants, and others.

38. After making substantial investments in the de-watering facility, Highland TH was prepared to begin operating the facility on or around December 20, 2014.

39. Terre Haute, the Terre Haute Dewatering Utilities, and the Terre Haute Board, however, *never* delivered waste activated sludge to the de-watering facility.

40. Furthermore, the governmental defendants *never* made a payment to Highland TH or OLG despite plaintiffs' continued and sustained efforts to secure compliance by the governmental defendants and Plocher and S. Plocher with their obligations.

41. Defendants Plocher and S. Plocher have continuously insisted on receipt of payment from OLG under the fraudulently and criminally procured Plocher Contract notwithstanding the fact that OLG and Highland TH have never received any payments from Terre Haute or any other sources with which in turn to make any payments to Plocher or S. Plocher.

42. Defendants Plocher and S. Plocher at all relevant times knew that OLG and Highland TH could not make payments to Plocher or anyone else unless and until Terre Haute and other government entities supplied OLG with funding from which to pay Plocher and meet obligations to others. Defendants Plocher and S. Plocher were fully aware of the fact that OLG never had the resources of its own to make the payments under the Plocher Contract and Plocher and S. Plocher knew that payments under the fraudulent Plocher Contract could never happen unless the government defendants paid OLG.

43. Representatives of Highland TH and OLG engaged in ongoing discussions with Mayor Bennett and Thompson beginning in November 2014 through May 2015 to determine whether Terre Haute, the Terre Haute Wastewater Utilities and the Terre Haute Board would honor their contractual commitments, the validity of which Lee, as the City's Corporation Counsel, had unequivocally confirmed in his November 2014 opinion letter. In the final analysis

and as previously alleged, Terre Haute, the Terre Haute Wastewater Utilities and the Terre Haute Board *never* made a single payment of their contractually obligated commitments.

44.  Mayor Bennett, Thompson and Lee repeatedly stated that the Underlying July 2014 Agreement, the Assignment and the Lease were valid contractual obligations that the governmental entities were required to honor.

45.  Defendants Plocher and S. Plocher were fully aware of and, upon information and belief, encouraged and solicited these misrepresentations to OLG.

46.  In reliance on the continuing false representations, OLG and Highland continued to incur costs to prepare and maintain the de-watering facility.

### (v)   The Secret Dealings Between the City and the Defendants

47.  Among other things, Terre Haute, on March 23, 2015, using its structural engineer as an intermediary, secretly contacted Plocher and S. Plocher to offer to purchase all the de-watering equipment owned by OLG and installed in the OLG-leased building.

48.  On March 23, 2015, defendants Plocher and S. Plocher, in response to Terre Haute's secret overture, confirmed that the de-watering equipment was owned by OLG.

49.  In complete derogation of OLG's rights, defendants Plocher and S. Plocher failed to notify OLG of Terre Haute's offer to purchase the OLG-owned equipment, and Plocher and S. Plocher, on their own and without informing OLG, negotiated to sell OLG's equipment to Terre Haute.

50.  Defendants Plocher and S. Plocher separately and together owed fiduciary duties to OLG that obligated defendants to place OLG's interests before any interest of Plocher and S. Plocher. At no point, however, did Plocher and S. Plocher ever honor or comply with those fiduciary obligations. Indeed, defendant S. Plocher, in sworn testimony, cynically mocked and repudiated any obligation to OLG.

51. Also in complete violation of OLG's rights, Plocher and S. Plocher were secretly paid several million dollars for the de-watering equipment owned by OLG, and the OLG-owned equipment was illegally and without authorization dismantled and removed by Plocher and S. Plocher from OLG's building, without OLG's knowledge or consent. OLG's equipment was in effect stolen by Plocher and S. Plocher; those defendants sold property they did not own after they stole it, a classic example of common law and statutory theft.

52. By refusing to disclose any material information to OLG, the Plocher defendants' conduct prevented and interfered with OLG's ability to negotiate with Terre Haute, Mayor Bennett and others. This foreclosed OLG's ability to reach a resolution of the overall issues and to restore to OLG the hundreds of thousands of dollars OLG had paid and wasted on the project. As a matter of fact, Mayor Bennett, after committing to reimburse OLG for its wasted costs and expenses, appeared on a television broadcast to unequivocally assert Terre Haute's promise to re-pay OLG and make OLG whole. Terre Haute's promise through Mayor Bennett and the mayor's broadcast promise were a lie of brazen public magnitude.

53. Moreover, without any disclosure to OLG, Terre Haute and its officials were negotiating a de-watering contract with defendants N. Sodrel and THDC, a politically active Indiana entity. Acting in illicit concert, defendants never disclosed these secret negotiations to OLG. In April 2015, Terre Haute accepted a suspicious and presumptively corrupt $750,000 payment from THDC and N. Sodrel in connection with the secret contract negotiations among Terre Haute, THDC and N. Sodrel.

54. In May 2015, the governmental defendants repudiated the Underlying July 2014 Agreement, the Assignment and the Lease, contending that they were not valid. This position contradicted the explicit opinions of Lee's November 2014 opinion letter of approval.

55. By surreptitiously stealing plaintiffs' equipment to sell to Terre Haute without justification and at artificially low prices, Plocher and S. Plocher intentionally induced the governmental agencies' breach of their contracts with Highland TH and OLG.

56. Also in flagrant disregard of OLG's rights, defendants Plocher and S. Plocher deliberately excluded OLG from secret negotiations with Terre Haute and its officials and finalized a transaction with Terre Haute that was entirely detrimental to OLG's interests.

57. The Plocher defendants' intentional conduct has caused OLG to suffer substantial damages. Those damages include, among other things, the expenses OLG incurred to perform its and Highland TH's obligations and the losses associated with the many millions of dollars of revenue and profits OLG would have earned had the governmental defendants performed their obligations.

58. Acting at the direction of S. Plocher, defendant Plocher initiated arbitration proceedings against OLG seeking to recover approximately $2.4 million. The arbitration proceeding was an integral part of the pervasive and long-standing scheme to damage OLG. The irrational and legally insufficient arbitration process resulted in an award of several hundred thousand dollars of unjustifiable damages against OLG.

59. In further violation of their duties, defendants Plocher and S. Plocher on March 14, 2017 initiated in the United States District Court for the Eastern District of Missouri a litigation to confirm the fraudulently procured arbitration award.

60. Defendants knew that the Missouri courts lacked both personal and *in rem* jurisdiction over OLG. Defendants' selection of Missouri was part of a pattern of conduct to harass and financially burden OLG and violate OLG's rights. Among other things, defendants' wrongful selection of Missouri was based on the fact that one of defendants' lawyers, who have

their only office in Illinois, is also admitted in Missouri; this fact excused defendants from having to incur the expense of engaging local counsel in Missouri.

61. Since the Court in Missouri lacked any type of jurisdiction over OLG, OLG did not appear in the litigation which defendants filed in Missouri.

62. On May 19, 2017, the District Court in Missouri, despite the fact that it did not have any jurisdiction over OLG, erroneously confirmed the arbitration award and entered a judgment of approximately $1 million, inclusive of interest, against OLG on May 25, 2017.

63. Through recent activities in Florida, the Plocher defendants have wrongfully sought to enforce a wholly invalid arbitral award.

## Count I
### [Fraud as Against All Defendants Regarding the Underlying July 2014 Agreement with the Exception of THDC and N. Sodrel]

64. Plaintiffs repeat and reallege each and every allegation of §§ 1-63, *supra*.

65. Terre Haute, the Terre Haute Wastewater Utilities and the Terre Haute Board created, with Powerdyne, the entirely bogus Underlying July 2014 Agreement.

66. By reason of the existence of the entirely fraudulent scam known as the Underlying July 2014 Agreement (*see* ¶¶18-23, *supra*), defendants Terre Haute, Terre Haute Wastewater Utilities, the Terre Haute Board, non-party Mayor Bennett and non-party Hirson, all aided and abetted by defendants Plocher and S. Plocher, have inflicted damages on plaintiffs in an about to be determined at trial but believed to exceed $87 million, together with interest, attorney's fees, expenses and costs.

## Count II
### [Aiding and Abetting Fraud as against Defendants Plocher and S. Plocher]

67. Plaintiffs repeat and reallege each and every allegation of ¶¶1-66, *supra*.

68. By knowingly participating in the acts of fraud and deceit identified in ¶¶1-66, *supra*, regarding the Underlying 2014 Agreement, the Assignment, the Lease and the Plocher Contract, defendants Plocher and S. Plocher, separately and individually, have aided and abetted the fraud inherent in the creation of the sham Underlying 2014 Agreement and the subsequent fraudulent acts involving the Assignment, the Lease and the Plocher Contract as identified in this Amended Complaint.

69. By reason of the foregoing, defendants Plocher and S. Plocher, jointly and severally, have damaged plaintiffs in an amount to be determined by a jury at trial but believed to exceed $87 million, together with attorney's fees, interest, cost and expenses.

## Count III
### [Fraudulent Inducement as against All Defendants With the Exception of THDC and N. Sodrel]

70. Plaintiffs repeat and reallege each and every allegation of ¶¶1-69, *supra*.

71. Defendants Terre Haute, the Terre Haute Dewatering Utilities and the Terre Haute Board, together with non-parties Powerdyne and Hirson, fraudulently induced, as described more fully in ¶¶24-25, *supra*, plaintiffs to enter into the assignment of the bogus Underlying July 2014 Agreement, the Assignment and the Lease.

72. By reason of the foregoing, plaintiffs have been damaged in an amount to be determined at trial but believed to exceed $87 million, together with attorney's fees, interest, costs and expenses.

## Count IV
### [Aiding and Abetting Fraudulent Inducement as against All Defendants With the Exception of THDC and N. Sodrel]

73. Plaintiffs repeat and reallege each and every allegation of ¶1-72, *supra*.

74. By knowingly participating in the fraudulent inducement of the assignment of the Underlying July 2014 Agreement, the Lease and the Plocher Contract, defendants Plocher and S. Plocher aided and abetted the fraudulent inducements.

75. By reason of the foregoing, defendants Plocher and S. Plocher are liable to plaintiffs in an amount to be determined at trial but believed to exceed $87 million, together with attorney's fees, interest, costs and expenses.

### Count V
### [Violation of the New Jersey Consumer Fraud Law]

76. Plaintiffs repeat and reallege each and every allegation of ¶¶1-75, *supra*.

77. The conduct of all defendants, including THDC and N. Sodrel, as well as the conduct of the non-parties as specifically identified in earlier allegations of this Amended Complaint, constitutes multiple violations of the New Jersey Consumer Fraud Act, NJSA §56:8-1 *et seq.*, entitling plaintiffs to triple damages of at least $261 million.

### Count VI
### [Breach of Fiduciary Duty as Against Plocher and S. Plocher]

78. Plaintiffs repeat and reallege each and every allegation ¶¶1-77, *supra*.

79. the Plocher Contract and pursuant to common law, defendants Plocher and S. Plocher were "fiduciaries" of OLG. For example, the Plocher Contract provided that

> Plocher] accepts the relationship of trust and confidence established by this Agreement and covenants with [OLG] to cooperate with [OLG] and exercise [Plocher's] skill and judgment in furthering the interests of [OLG] . . . and to perform the Work in an expeditious and economical manner consistent with [OLG's] interests.

80. repeatedly violated their fiduciary duties to OLG.

81. By reason of their misconduct, Plocher and S. Plocher have damaged OLG in an amount to be determined by a jury at trial but believed to exceed $87 million.

## Count VII

### [Intentional Interference in Contract as Against Plocher, S. Plocher, THDC, and N. Sodrel

82. Plaintiff repeats and realleges each and every allegation of §§ 1-81, *supra*.

83. As described in greater detail earlier in this Complaint, OLG and Highland TH had contracts with governmental defendants with which Plocher, S. Plocher, THDC and N. Sodrel intentionally interfered.

84. By reason of the foregoing, defendants Plocher, S. Plocher, THDC and N. Sodrel have damaged OLG in an amount to be determined by a jury at trial but believed to exceed $87 million, together with attorney's fees, interests, costs and expenses.

## Count VIII
### [Theft and Unjust Enrichment as Against Plocher and S. Plocher]

85. Plaintiff repeats and realleges each and every allegation of §§ 1-84, *supra*.

86. Defendants, by selling property and equipment owned by OLG, converted that property and equipment to themselves and have damaged OLG in an amount to be determined at trial but believed to exceed $5 million.

## Count IX
### [Declaratory Relief]

87. Plaintiff repeats and realleges each and every allegation of ¶¶1-86, *supra*.

88. OLG could perform under the Plocher Contract only to the extent that the governmental defendants made the payments required pursuant to the sham Underlying July 2014 Agreement and the sham Lease.

89. At the time of the assignment of the Plocher Contract, defendants knew that it would be impossible for OLG to make payments to Plocher unless Terre Haute, the Terre Haute

Wastewater Utilities and the Terre Haute Board made the payments to OLG that they were required to make.

90. As described in greater detail earlier in this Complaint, none of the entities which were required to pay OLG ever made a single payment to OLG.

91. By reason of the foregoing, the Court should enter an order vacating and annulling the Plocher Contract *ab initio* because of the existence of fraud, a material mistake of fact and/or impossibility of performance.

WHEREFORE, plaintiffs demand judgment to be awarded in the amounts to be determined in Counts I to VIII, *supra*, declaratory relief as identified in Count IX, and punitive damages against all defendants in the amount of $150 million.

Dated: September 7, 2017              DANIELS & DANIELS, LLC

                                      By: _____
                                          John A. Daniels

                                      Bar ID#045721992

PAUL BATISTA, P.C.
26 Broadway, Suite 1900
New York, New York 10004
(212) 980-0070 (T)
(212) 344-7677 (F)
Batista007@aol.com
  –   Of Counsel –

19

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *See Instructions on the reverse of this form.*

## I. (a) PLAINTIFFS
Overseas Lease Inc., E George Badcock, III and Highland TH LLC

### DEFENDANTS
Plocher construction Company, Inc. ET AL

(b) County of Residence of First Listed Plaintiff: **Morris**
*(except in U.S. Plaintiff Cases)*

County of Residence of First Listed Defendant:
*(in U.S. Plaintiff Cases only)*
NOTE: In land condemnation cases, use the location of the tract of land involved.

(c) Attorneys *(Firm Name, Address, Telephone No., Email Address):*
Daniels & Daniels LLC, 6812 Park Ave., Guttenberg, NJ, 201-868-1868, jad1903@gmail.com
Attorney Id No.: **045721992**

Attorneys *(If known):* **UNKNOWN**
Attorney Id No.:

## II. BASIS OF JURISDICTION *(Place an "X" in one box only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in one box for Plaintiff and one box for Defendant)* (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business in This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☒ 2 | Incorporated *and* Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in one box only)*

| CONTRACT | TORTS | Personal Property: | PRISONER PETITIONS | ☐ 791 Employee Retirement Income Security Act | ☐ 470 Racketeer Influenced and Corrupt Organizations |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **Personal Injury:** | ☒ 370 Other Fraud | **Habeas Corpus:** | | ☐ 480 Consumer Credit |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 371 Truth in Lending | ☐ 463 Alien Detainee | **PROPERTY RIGHTS** | ☐ 490 Cable/Sat TV |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | **BANKRUPTCY** | ☐ 510 Motions to Vacate Sentence | ☐ 820 Copyrights | ☐ 850 Securities/Commodities/Exchange |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 422 Appeal 28 USC 158 | ☐ 530 General | ☐ 830 Patent | ☐ 890 Other Statutory Actions |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 423 Withdrawal 28 USC 157 | ☐ 535 Death Penalty | ☐ 840 Trademark | ☐ 891 Agricultural Acts |
| ☐ 151 Medicare Act | ☐ 340 Marine | **CIVIL RIGHTS** | **Other:** | **SOCIAL SECURITY** | ☐ 893 Environmental Matters |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ 861 HIA (1395ff) | ☐ 895 Freedom of Information Act |
| | ☐ 350 Motor Vehicle | ☐ 441 Voting | ☐ 550 Civil Rights | ☐ 862 Black Lung (923) | ☐ 896 Arbitration |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 442 Employment | ☐ 555 Prison Conditions | ☐ 863 DIWC/DIWW (405(g)) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 160 Stockholders' Suit | ☐ 360 Other Personal Injury | ☐ 443 Housing/Accommodations | ☐ 560 Civil Detainee - Conditions of Confinement | ☐ 864 SSID Title XVI | |
| ☒ 190 Other Contract | ☐ 362 Personal Injury - Med. Malpractice | ☐ 445 Americans w/Disabilities - Employment | | ☐ 865 RSI (405(g)) | ☐ 950 Constitutionality of State Statutes |
| ☐ 195 Contract Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 446 Americans w/Disabilities - Other | **FORFEITURE/PENALTY** | **FEDERAL TAX SUITS** | |
| ☐ 196 Franchise | ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability | ☐ 448 Education | ☐ 625 Drug-Related Seizure of Property 21 USC 881 | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| **REAL PROPERTY** | ☐ 368 Asbestos Personal Injury Product Liability | **IMMIGRATION** | ☐ 690 Other | ☐ 871 IRS - Third Party 26 USC 7609 | |
| ☐ 210 Land Condemnation | ☐ 380 Other Personal Property Damage | ☐ 462 Naturalization Application | **LABOR** | **OTHER STATUTES** | |
| ☐ 220 Foreclosure | ☐ 385 Property Damage Product Liability | ☐ 465 Other Immigration Actions | ☐ 710 Fair Labor Standards Act | ☐ 375 False Claim Act | |
| ☐ 230 Rent Lease & Ejectment | | | ☐ 720 Labor/Management Relations | ☐ 400 State Reapportionment | |
| ☐ 240 Torts to Land | | | ☐ 740 Railway Labor Act | ☐ 410 Antitrust | |
| ☐ 245 Tort Product Liability | | | ☐ 751 Family and Medical Leave Act | ☐ 430 Banks and Banking | |
| ☐ 290 All Other Real Property | | | ☐ 790 Other Labor Litigation | ☐ 450 Commerce | |
| | | | | ☐ 460 Deportation | |

## V. ORIGIN *(Place an "X" in one box only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district *(specify)*
- ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(do not cite jurisdictional statutes unless diversity)*:
Brief description of cause: **28 USC SECTION 1331, 28 USC SECTION 1332, 28USC SECTION 1367**

## VII. REQUESTED IN COMPLAINT:
☐ Check if this is a **Class Action** under R. 23, F.R.Cv.P.    Demand $ **261,000,000.00**
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY *(See instructions):*
JUDGE:
DOCKET NO.: **2:17-04917 (JMV) (MF)**

DATE: **September 12, 2017**
Signature of Attorney of Record: JOHN A DANIELS ESQ    9-12-17

**FOR OFFICE USE ONLY**

| RECEIPT # | AMOUNT | APPLYING IFP | JUDGE | MAG. JUDGE |
|---|---|---|---|---|

30C - Civil Cover Sheet
JS44
Rev. 12/12   P10/13



Printed by ALL-STATE LEGAL®
A Division of ALL-STATE International, Inc.
www.aslegal.com   800.222.0510   Page 1