# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

OVERSEAS LEASE GROUP, INC.;
E. GEORGE BADCOCK, III; and
HIGHLAND TH, LLC,

*Plaintiffs*,

v.

PLOCHER CONSTRUCTION COMPANY,
INC.; SCOTT PLOCHER; THE CITY OF
TERRE HAUTE; THE CITY OF TERRE
HAUTE WASTE WATER UTILITIES;
BOARD OF PUIBLIC WORKS AND
SAFETY; TERRE HAUTE DEWATERING
COMPANY, LLC, and M. NOAH
SODREL,

*Defendants*.

Civil Action No. 17-4917
(JMV)(MF)

**OPINION**

**John Michael Vazquez, U.S.D.J.**

In this case, Plaintiffs allege a massive fraud in connection with an Indiana project aimed at turning sludge into diesel fuel. Currently pending before the Court is Defendants' motion to dismiss Plaintiffs' Amended Complaint ("FAC"). Plaintiffs are Overseas Lease Group, Inc. ("OLG"); Highland TH, LLC ("Highland"); and E. George Badcock, III ("Badcock") (collectively "Plaintiffs"). Defendants consist of (1) the City of Terre Haute ("Terre Haute"), The City of Terre Haute Wastewater Utilities ("Terre Haute Wastewater Utilities"), and Board of Public Works and Safety ("Terre Haute Board") (collectively the "Terre Haute Defendants"); (2) Plocher Construction Company, Inc. ("Plocher") and Scott Plocher ("S. Plocher") (collectively the

"Plocher Defendants"); and (3) Terre Haute Dewatering Company, LLC ("THDC") and M. Noah Sodrel ("Sodrel") (collectively the "THDC Defendants"). The Court uses "Defendants" when referring to all Defendants collectively.

The Court reviewed the parties' submissions,[1] and decided the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the following reasons, Defendants' Motions to Dismiss is **GRANTED** and the matter is **DISMISSED with prejudice**.

Before turning to its analysis, the Court notes that it is utterly dismayed with the opposition brief filed by Plaintiffs. The Terre Haute Defendants, the Plocher Defendants, and the THDC Defendants each submitted briefs totaling over 75 pages in support of their motions to dismiss. Each brief raised sound and legitimate arguments with supporting authority. In opposition, Plaintiffs submitted one 22-page brief addressing all three motions. Plaintiffs' opposition devoted a mere seven pages to actual legal argument and analysis.

The opposition also casts unwarranted aspersions on counsel for Defendants, accusing counsel of "chicanery" and ethical violations, among other things. Opp. at 19. Moreover, the opposition is severely lacking in any substantive analysis, instead relying on conclusory statements and hyperbole. The opposition often fails to even make plausible assertions, as would be necessary

---

[1] The following briefs were submitted in connection with this motion: the Plocher Defendants' moving brief (D.E. 9); the Terre Haute Defendants' moving brief (D.E. 12); the THDC Defendants' moving brief (D.E. 23); Plaintiffs' Unified Legal Memorandum in Opposition to Defendants' Separate Motions to Dismiss, hereinafter "Opp." (D.E. 35); the Terre Haute Defendants' reply brief (D.E. 38); the Plocher Defendants' reply brief (D.E. 39); and the THDC Defendant's reply brief (D.E. 40). Plaintiffs also filed a sur-reply letter, D.E. 41, without leave of the Court, which was opposed to by the Plocher Defendants, D.E. 42. The Court has not relied on D.E. 41.

2

for the filing a complaint in federal court. Because the opposition's analysis is so plainly deficient, the Court recounts the arguments here.

First, the THDC Defendants argue, among other things, that Plaintiffs fail to make plausible allegations as to the THDC Defendants and notes that they are only mentioned briefly in the FAC. Plaintiffs do not address this argument at all, other than to indicate in conclusory terms that the FAC is plausibly pled. Opp. at 14-16.

Second, all Defendants make credible arguments concerning the Court's personal jurisdiction, which is in no way evident from the face of the FAC. In response, Plaintiffs indicate that "[a]s an *undisputed* factual matter, all the defendants knew their dealings would profoundly affect a deeply New Jersey-connected entity and that their misconduct would severely damage New Jersey *entities and people*." Opp. at 16 (emphases added). Defendants do strongly dispute that there is a New Jersey connection here; otherwise, they would not have made the personal jurisdiction argument. Furthermore, there is *one* entity, OLG–not multiple entities or any individuals–in the FAC that allegedly has a principal place of business in New Jersey. As to the personal jurisdiction argument, Plaintiffs also rely on conclusory statements such as "[t]he relevant law more than adequately supports the assertion of personal jurisdiction as to all defendants[.]" *Id.* Plaintiffs continue that "'[f]air play and substantial justice' clearly sweep all of these major defendants into New Jersey. The argument is not only conclusory but also the wrong standard for determining personal jurisdiction. Opp. at 17.

Third, all Defendants make credible arguments as to proper venue, and again, it is in no way evident from the face of the FAC that the District of New Jersey is the proper venue. In response, Plaintiffs assert that "[a]s the [FAC] articulates, these New Jersey-based Plaintiffs made crucial decisions and undertook substantial conduct in New Jersey." Opp. at 18. This is an

unmistakably erroneous recitation of Plaintiffs' own FAC. As noted, the FAC refers to one Plaintiff, not multiple, having a principal place of business in New Jersey. The FAC does not refer to any conduct, much less substantial conduct, as having occurred in New Jersey. Given that the Plaintiffs are referring to their own FAC, the Court finds this assertion to be made without a good faith basis. Also, Plaintiffs argue that New Jersey is "the *only* place" where the injury took place. Opp. at 18. This is not evident from the face of the FAC and is also not the proper venue standard.

Fourth, Defendants make arguments concerning *res judicata* in light of a decision and order in the US District Court for the Southern District of Indiana, *Highland TH, LLC v. City of Terre Haute*, 2016 WL 2866052 (S.D. Ind. May 17, 2016), *amended in part, adhered to in part*, 2016 WL 4206011 (S.D. Ind. Aug. 10, 2016) (the "Indiana Federal Action"). The Plocher Defendants also argue that the matter is barred because it has been arbitrated and subject to a final order in federal court in Missouri. Plaintiffs' argument that their claims made "in the Indiana federal court were specifically preserved without prejudice for further litigation" is a clear misstatement, as certain claims were dismissed with prejudice. Opp. at 4. As to the Plocher Defendants, the complaint was dismissed without prejudice. Importantly, the Southern District of Indiana dismissed the complaint against the Plocher Defendants so that the parties could proceed to a contractually-agreed upon arbitration. The Court deems Plaintiffs' argument to be made without a good faith basis. Ironically, it is also on this point that Plaintiffs accused defense counsel of chicanery and ethical violations.

As to the arbitration argument, Plaintiffs deem it to be "blatant nonsense" and continue that "there are no written, enforceable written (sic) contracts requiring arbitration. The Plocher arbitration was merely a self-styled debt collection proceeding." Opp. at 20. Given the fact that there was a written contract with an arbitration clause and that an actual binding arbitration did

4

occur, the Court once again finds this argument was apparently made without a good faith basis by Plaintiffs. The argument is particularly troubling given that the District Judge in the Indiana Federal Action found that there was a binding arbitration clause that encompassed Plaintiffs' claims.

Finally, Defendants argue that the FAC does not plausibly set forth a cause of action under New Jersey Consumer Fraud Act ("NJCFA"), among other things, Plaintiffs are not "consumers," and the property at issue is not subject to the NJCFA. Yet again, Plaintiffs completely fail to address the merits of the arguments. Instead, Plaintiffs indicate that the NJCFA should be liberally construed; that the NJCFA protects "the interests of New Jersey residents"; and that if Defendants do not like the NJCFA, they should ask the New Jersey legislature to change the law. Opp. at 21.

## I.     BACKGROUND

### A.  Factual Background[2]

Plaintiff OLG, a business that provides complex leasing services to a variety of organizations, is incorporated under the laws of Delaware. FAC ¶ 7. OLG's principal place of business is in Parsippany, New Jersey–this is the only reference to New Jersey in the FAC. *Id.* Plaintiff Highland is a Delaware limited liability company that was acquired by OLG. *Id.* ¶ 8. Plaintiff Badcock, a citizen of Florida, is the President and Chief Executive Officer of OLG. *Id.* ¶ 9. Defendant Plocher is an Illinois corporation that does general construction in several areas of the United States. *Id.* ¶ 10. Defendant S. Plocher is a citizen of Illinois. *Id.* ¶ 11. Defendant Terre Haute is an Indiana municipal corporation and a citizen of Indiana. *Id.* ¶ 12. Defendant Terre Haute Wastewater Utilities, an agency and subdivision of Terre Haute, is a citizen of Indiana. *Id.*

---

[2] The factual background is taken from the Amended Complaint ("FAC"), D.E. 7. When reviewing a motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

¶ 13. Defendant Terre Haute Board is also a citizen of Indiana and is an agency and subdivision of Terre Haute created under Indiana law and controlled by Terre Haute and Mayor Duke Bennett ("Mayor Bennett"). *Id.* ¶ 14. Defendant THDC is an Indiana limited liability company owned and controlled by Defendant Sodrel, an Indiana citizen. *Id.* ¶¶ 16-17.

On July 15, 2014, the Terre Haute Defendants and non-party Powerdyne Terre Haute Holdings LLC ("Powerdyne") entered into a Purchase and Sale Agreement ("Agreement"). *Id.* ¶ 18. The Terre Haute Defendants contracted to buy renewable diesel fuel from Powerdyne and to deliver waste-activated sludge and other biological material to Powerdyne to produce diesel fuel. *Id.* ¶ 19. The Terre Haute Defendants agreed to make 240 consecutive monthly payments of $719,326.58 each for de-watering service, for a total of approximately $172 million. *Id.* ¶ 20. De-watering is a process of removing water from the waste-activated sludge through centrifugation to produce renewable diesel fuel. *Id.*

Plaintiffs claim that Powerdyne, owned by Geoffrey Hirson, was a shell entity with no business, no assets, and few employees and was run from a car wash. *Id.* ¶¶ 22, 25. Plaintiffs further allege that Terre Haute Defendants knew, when the Agreement was executed, that they did not have the funds to fulfill their part of the contract and that the Terre Haute Defendants also had no reasonable expectation that they would ever have the money. *Id.* ¶ 21. Plaintiffs allege that on multiple occasions, Terre Haute executive Mark Thompson ("Thompson") informed representatives of OLG that Terre Haute had contracts with as many as 100 other municipalities that would pay Terre Haute to process their wastewater. *Id.* ¶ 31. Thompson and the Terre Haute City Controller's Office allegedly provided falsified revenue spreadsheets to representatives of OLG concerning projected revenue. *Id.* ¶ 32. On May 15, 2014, Highland and Terre Haute

Wastewater Utilities entered into a Lease Agreement ("Lease"), under which Terre Haute agreed to lease to Highland facilities for the de-watering operation. *Id.* ¶ 25.

On November 5, 2014, Thompson, S. Plocher, Badcock, and Hirson met to discuss the de-watering project. *Id.* ¶ 26. During the meeting, Thompson allegedly asked Badcock for a cash bribe in a "pay-to-play" scheme. *Id.* ¶ 27. In the scheme, Thompson and other public officials, including Mayor Bennett, received cash in exchange for conducting business with Terre Haute. *Id.* In sworn deposition testimony, Badcock stated that he refused to go along with the scheme. *Id.* ¶ 28. Badcock, however, still decided to go forward with the deal. Plaintiffs also allege that the Plocher Defendants have made campaign contributions to Mayor Bennett since 2012, supposedly for improper favorable treatment. *Id.* ¶ 29.

On November 20, 2014, Powerdyne assigned its rights under the Agreement to Highland ("Assignment"). *Id.* ¶ 24. In the same month, OLG also acquired Highland from Powerdyne. *Id.* ¶¶ 8, 24, 36. Prior to the Assignment, on October 27, 2014, the Plocher Defendants and Highland executed an agreement for construction services related to the de-watering project ("Plocher Contract"). *Id.* ¶ 30. The Plocher Contract's arbitration provision, "§ 13.2 Binding Dispute Resolution," provided as follows:

> All claims or disputes arising from or in connection with the Contract or performance under it, including claims and disputes over whether the Contract is in effect and enforceable, which are not resolved by negotiation (and mediation if the Agreement requires it), shall be finally resolved by… Arbitration administered by and in accordance with the Commercial Industry Arbitration Rules of the American Arbitration Association, in effect as of the date of the Agreement. All arbitration hearings shall be held in Terre Haute, Indiana unless the parties agree on another location. The Contractor agrees that the Owner may add to the arbitration, by joinder or consolidation, its designated Operations & Maintenance Contractor for the Project, if disputes between the Owner and Contractor involve issues of fact that are common to disputes between Operations & Maintenance Contractor, or resolving all of the

7

disputes in one proceeding is reasonably required to avoid inconsistent results. Any award rendered by the arbitrator(s) may be converted into a judgment in and enforced by any court of competent jurisdiction.

D.E. 9-6 at 10.

After OLG acquired Highland, the Plocher Contract was assigned to OLG. D.E. 9-7. This assignment indicates that OLG has an address of "110 East Broward Boulevard, Suite 1700, Fort Lauderdale, Florida 33301." *Id.* at 2. As noted, the FAC indicates that OLG's principal place of business is in New Jersey.

On November 24, 2014, Terre Haute's Corporation Counsel, Chou-Il Lee, drafted an opinion letter stating that all the relevant contracts were valid and binding on Terre Haute and the other defendants. FAC ¶ 36. Based on this letter, among other things, OLG acquired Highland and entered into the assignment of the Plocher Contract. *Id.*

In December 2014, Highland was prepared to begin operating the de-watering facility. *Id.* ¶ 38. But Terre Haute never delivered waste-activated sludge to the facility and none of the Agreements' payments were ever made to OLG or Highland. *Id.* ¶¶ 39-40. The Plocher Defendants nevertheless continued to ask for its payments from OLG under the Plocher Contract. *Id.* ¶ 41.

Plaintiffs also allege that the Terre Haute Defendants and the Plocher Defendants negotiated and sold OLG's de-watering equipment without notifying OLG. *Id.* ¶¶ 47-49, 51. Plaintiffs claim that the Plocher Defendants "owed fiduciary duties to OLG[.]" *Id.* ¶ 50. Plaintiffs do not state the basis of the fiduciary duty. Terre Haute and its officials also negotiated a de-watering contract with the THDC Defendants, and in April 2015, Terre Haute "accepted a suspicious and presumptively corrupt $750,000 payment" from the THDC Defendants in connection with the "secret contract negotiations." *Id.* ¶ 53.

8

In May 2015, the Terre Haute Defendants repudiated the Agreement, Assignment, and Lease. *Id.* ¶ 54. The Plocher Defendants initiated arbitration proceedings against OLG and won an award. *Id.* ¶ 58. On March 14, 2017, in violation of some alleged but unspecified duty, the Plocher Defendants moved to confirm the arbitration award in the Eastern District of Missouri, even though the Plocher Defendants allegedly knew that Missouri lacked personal and *in rem* jurisdiction over OLG. *Id.* ¶¶ 59-60. The Eastern District of Missouri confirmed the arbitration award and entered a judgment of approximately $1 million against OLG on May 25, 2017. *Id.* ¶ 62.

Plaintiffs assert nine counts in the FAC: Count 1–fraud regarding the Agreement (against all Defendants except THDC Defendants); Count 2–aiding and abetting fraud (against Plocher Defendants); Count 3–fraudulent inducement (against all Defendants except THDC Defendants); Count 4–aiding and abetting fraudulent inducement (against all Defendants except THDC Defendants); Count 5–violation of the NJCFA; Count 6–breach of fiduciary duty (against Plocher Defendants); Count 7–intentional interference in contract (against Plocher Defendants and THDC Defendants); Count 8–theft and unjust enrichment (against Plocher Defendants); and Count 9–Declaratory Relief.

### B. **The Indiana Federal Action**

While the arbitration with the Plocher Defendants is at least mentioned in the FAC, the related matter filed by OLG and Highland in the District Court for the Southern District of Indiana is completely omitted.

<u>The Allegations and Counts in the Indiana Federal Action</u>

The original complaint was filed on June 9, 2015, and the amended complaint was filed in October 23, 2015, D.E. 9-5. The original plaintiffs were Highland TH, LLC and OLG. The

defendants were the Terre Haute Defendants, Mayor Bennett, Thompson, THDC, and Plocher. *Id.*
¶¶ 1-7. OLG indicated its principal place of business as Florida, and that "both Highland and OLG
are citizens of Delaware and Florida." *Id.* ¶ 1. The plaintiffs further indicated that "[v]enue is
proper in this judicial district because all [d]efendants reside in this judicial district, a substantial
part of the events and omissions giving rise to [p]laintiffs' claims occurred in this judicial district,
and a substantial part of the property that is the subject of this lawsuit is situated in this judicial
district." *Id.* ¶ 11.

The factual allegations in the amended complaint are remarkably similar to those in the
FAC in the current matter. The salient allegations were as follows. On July 15, 2014, the Terre
Haute Defendants and Powerdyne entered into the Agreement. *Id.* ¶ 13. The Terre Haute
Defendants agreed to pay 240 consecutive monthly payments at $719,326.58 for a total revenue
of over $172 million. *Id.* ¶¶ 17-18. The parties to the Agreement later agreed to assign the rights
and to delegate the obligations concerning de-watering to Highland, as set forth in the November
20, 2014 Partial Assignment and Delegation of Purchase and Sale Agreement. *Id.* ¶¶ 19-20. On
May 15, 2014, Highland and Terre Haute Wastewater Utilities entered into the Lease for the
facility where the de-watering operation would take place, and in November 2014, OLG acquired
Highland. *Id.* ¶¶ 22, 25. Thompson allegedly represented that other cities had entered into
wastewater supply agreements with Terre Haute, and, as a result, there was a sufficient revenue
stream to cover the financial obligations under the Agreement. *Id.* ¶ 27. Thompson even provided
spreadsheets as to projected revenues. *Id.* Thompson allegedly repeated those representations
again in 2014 and 2015, and in reliance on those representations, OLG acquired Highland. *Id.* ¶¶
28, 30. In December 2014, OLG accepted the assignment of Highland's obligations under the
Plocher Contract. *Id.* ¶ 32. Highland was ready to begin operations at the facility in December

2014; however, no sludge was ever delivered, and no payments were ever made. *Id.* ¶¶ 35-37. In March 2015, THDC entered into negotiations with Terre Haute to provide de-watering services. *Id.* ¶ 42. In March 2015, Terre Haute and THDC entered into an agreement, and THDC agreed to pay Terre Haute a deposit of $750,000 for the anticipated lease payments of the facility. *Id.* ¶ 43. In May 2015, the Terre Haute Defendants repudiated the Agreement and the Assignment, saying neither was valid. *Id.* ¶ 49.

The eight counts in the amended complaint were as follows: Count 1–declaratory judgment that the Agreement and the Assignment were both valid; Count 2–breach of contract as to the Agreement and Assignment; Count 3–quantum meruit; Count 4–fraud; Count 5–appointment of a receiver; Count 6–injunction; Count 7–tortious interference with contract against Plocher for selling Highland's equipment to Terre Haute; and Count 8–tortious interference with business relationships against Plocher and THDC.

Southern District of Indiana District Court Opinion and Order

On May 17, 2017, the Honorable Jane Magnus-Stinson, U.S.D.J., ruled on the original matter brought by OLG and Highland. D.E. 23-3. Judge Magnus-Stinson ruled that the Agreement was invalid under Indiana law because Terre Haute had not obtained appropriation before entering into the Agreement. Judge Magnus-Stinson also noted that OLG knew of the lack of required appropriation because they asserted that revenues were anticipated from other municipalities–as opposed to monies having been appropriated. *Id.* at 12. Moreover, the court continued, Indiana law is "emphatic" that when contracting with a municipality, a private party has a duty to ensure that municipality has taken the necessary steps to enter into the contract. *Id.* at 8-12. The judge concluded that because the Agreement was not valid, neither was the Assignment. *Id.* at 23. The court granted Terre Haute's motion to dismiss. Judge Magnus-Stinson also dismissed as to THDC

11

because the underlying contract was invalid, and separately, because plaintiffs had admitted that THDC had acted to "further [its] own legitimate business interests" which precluded a tortious interference claim under Indiana law. *Id.* at 25, 27. The court granted THDC's motion to dismiss.

Plocher also moved to dismiss because OLG had agreed to arbitrate claims. *Id.* at 28. OLG responded that the tortious interference claim arose from the Agreement and not the Plocher Contract. *Id.* Judge Magnus-Stinson noted that the arbitration provision contained "arising out of or relating to" language, which was interpreted very broadly and created a presumption of arbitrability. *Id.* at 30. The court then found that the arbitration provision applied because "[t]he claims originate from the relationship between Plocher and Highland [as] set forth in the Plocher Contract." *Id.* at 31. The court also noted that the arbitration was already underway and that OLG had asserted a counterclaim for tortious interference in the arbitration, which demonstrated that OLG viewed the claims as related to the Plocher Contract. *Id.* Judge Magnus-Stinson ordered that Plocher be dismissed so that the matter could be arbitrated. *Id.* at 32.

The amended final judgement stated that the plaintiffs' claims against the Terre Haute Defendants were dismissed with prejudice; that plaintiffs' claims against THDC were dismissed with prejudice; and that plaintiffs' claims against Plocher were dismissed without prejudice. D.E. 36-1.

### C. **The Missouri Arbitration**

Plocher and OLG proceeded to arbitration before the American Arbitration Association, Case No.: 01-15-0003-8492. Plocher's amended arbitration claim concerned the Plocher Contract. D.E. 9-8. Plocher asserted that OLG never paid Plocher for the work it performed and that Plocher was able to somewhat mitigate its loss by selling some of the de-watering plant equipment. *Id.* OLG filed an answer, affirmative defenses, and counterclaim. D.E. 9-9. OLG admitted that its

principal place of business was located at "110 East Broward Blvd, Suite 1700, Fort Lauderdale, Florida 33301." *Id.* ¶ 3. In the factual basis of its counterclaim, OLG repeated many of the same substantive allegations as those in its amended complaint in the Southern District of Indiana. *Id.* at 11-15. The counterclaims listed were tortious interference with contract as to Plocher selling Highland's equipment to Terre Haute; and tortious interference with business relationships. *Id.* at 14-16.

On February 13, 2017, the American Arbitration Association panel issued its decision. D.E. 9-3. The arbitration hearing occurred on January 31, 2017 and February 1, 2017 in St. Louis, Missouri. *Id.* at 3. Badcock testified and was represented by one of his current counsel, Paul Batista, Esq. *Id.* Badcock's deposition transcripts were also received into evidence. *Id.* at 4. Plocher was awarded $989,694.80 on its claim; and OLG was denied any recovery on its counterclaims. *Id.* at 5. A motion to confirm the arbitration award was made by Plocher in the District Court for the Eastern District of Missouri. D.E. 9-10. On May 25, 2017, the Honorable John A. Ross, U.S.D.J., entered an amended judgment that confirmed the award in its entirety. D.E. 9-4. OLG did not appeal the amended judgment.

## II.  LEGAL ANALYSIS

### A.  **Personal Jurisdiction**

Federal Rule of Civil Procedure 12(b)(2) permits a motion to be dismiss for lack of personal jurisdiction. In such a motion, the plaintiff "bears the burden of demonstrating the facts that establish personal jurisdiction." *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002). Initially, a court "take[s] the allegations of the complaint as true." *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996). However, once a defendant raises a jurisdictional defense, "a plaintiff bears the burden of proving by affidavits or other competent evidence that jurisdiction is

proper." *Id.*; *see also Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984). Yet, in reviewing the evidence, a court must "accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992); *see also Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) ("[I]t is well established that in deciding a motion to dismiss for lack of jurisdiction, a court is required to accept the plaintiff's allegations as true, and is to construe disputed factors in favor of the plaintiff") (internal quotation marks omitted); *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003) ("[A] court is required to accept the plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff [when deciding a motion regarding personal jurisdiction.]"). Therefore, in determining whether personal jurisdiction exists, the Court looks beyond the pleadings to all relevant evidence and construes all disputed facts in favor of the plaintiff.

"[A] federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state" so long as the jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007) (internal quotation marks omitted). The inquiry thus involves a two-step process, first looking to the state requirements and then to the constitutional requirements. *IMO Indus., Inc. v. Kiekart AG*, 155 F.3d 254, 259 (3d Cir. 1998). New Jersey's long-arm jurisdiction law provides that courts may "exercise jurisdiction over a non-resident defendant to the uttermost limits permitted by the United States Constitution." *Nicastro v. McIntyre Mach. Am., Ltd.*, 201 N.J. 48, 72 (2010) (internal quotation marks omitted), *rev'd on other grounds sub nom., J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873 (2011). Accordingly, the two steps are collapsed into one and "we ask whether, under the Due Process Clause, the defendant has certain

minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007) (internal quotation marks omitted).  In other words, to establish personal jurisdiction, the Due Process Clause requires (1) minimum contacts between the defendant and the forum; and (2) that jurisdiction over the defendant comports with "'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)).

The "constitutional touchstone remains whether the defendant purposefully established 'minimum' contacts in the forum State." *Id.* at 474 (citing *Int'l Shoe Co.*, 326 U.S. at 316).  A defendant must have "fair warning" that its conduct will subject it to the jurisdiction of a foreign court. *Id.* at 472.  A defendant's conduct and connection with the forum state must be such that the defendant should reasonably anticipate being haled into court there. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Once a plaintiff demonstrates a *prima facie* case of personal jurisdiction by establishing minimum contacts, the burden shifts to the defendant.  In fact, once minimum contacts have been shown, jurisdiction is "presumptively constitutional." *O'Connor*, 496 F.3d at 324.  A defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477.

Personal jurisdiction may be established by means of general jurisdiction or specific jurisdiction over a defendant. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  If a defendant is subject to a forum's general jurisdiction, the defendant can be sued there on any matter. *Id.*  If, however, a defendant is solely subject to specific jurisdiction, the

defendant may only face suit in the forum if its activities concerning the forum are related to the claims in the suit. *Id.*

1. General Personal Jurisdiction

General jurisdiction, also called all-purpose jurisdiction, may be asserted over an out-of-state corporation "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Id.* For an entity, its "place of incorporation and principal place of business are paradigm bases for general jurisdiction[.]" *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (internal quotation marks omitted). For an individual, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]" *Id.* (citation omitted). Once general jurisdiction is established, a court may hear any and all claims against the defendant. *Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 919.

Here, the Court does not have general personal jurisdiction over any Defendant. None of the individual Defendants are alleged to be domiciled in New Jersey. None of the municipal or entity defendants are alleged to be incorporated in New Jersey or have their principal place of business in the state. Plaintiffs provide no additional allegations or information that would change this analysis.

2. Specific Personal Jurisdiction

Specific jurisdiction requires that the defendant "purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp.*, 471 U.S. at 472 (internal citations and quotation marks omitted). The minimum contacts analysis depends upon "the relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977). However, actual

"[p]hysical presence within the forum is not required to establish personal jurisdiction over a nonresident defendant." *IMO Indus., Inc.*, 155 F.3d at 259.

The Third Circuit has laid out a three-part test to determine whether specific jurisdiction exists as to a particular defendant. *O'Connor*, 496 F.3d at 317. First, the defendant must have "purposefully directed [its] activities at the forum." *Id.* (internal quotation marks omitted). Second, the litigation must "arise out of or relate to at least one of those activities." *Id.* (internal quotation marks omitted).[3] Third, if the first two requirements are met, the exercise of jurisdiction must "otherwise comport with fair play and substantial justice." *Id.* (internal quotation marks omitted). A variation of the *O'Connor* test may apply depending on the nature of the action, for example if an intentional tort is alleged. In *Calder v. Jones*, 465 U.S. 783, 788-90 (1984), the Supreme Court discussed the requirements of specific personal jurisdiction as to libel, an intentional tort. Interpreting *Calder*, the Third Circuit recognized that to establish specific personal jurisdiction, a plaintiff was required to show more than the fact that "the harm caused by the defendant's intentional tort is primarily felt within the forum." *IMO Indus., Inc.*, 155 F.3d at 265. Instead, the Third Circuit ruled that "the *Calder* 'effects test' can only be satisfied if the plaintiff can point to contacts which demonstrate that the defendant *expressly aimed* its tortious conduct at the forum, and thereby made the forum the focal point of the tortious activity." *Id.*

---

[3] This factor has also been characterized as "purposeful availment." *Burger King*, 471 U.S. at 475. The factor focuses on contact that the defendant itself created with the forum State. *Id.* The "purposefully directed" or "purposeful availment" requirement is designed to prevent a person from being haled into a jurisdiction "solely as the result of random, fortuitous, or attenuated contacts" or due to the "unilateral activity of another party or third person." *Id.* (internal quotation marks omitted) (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)); *World-Wide Volkswagen Corp.*, 44 U.S. at 299; *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)).

Here, neither the FAC nor the Declaration of Plaintiff Badcock, D.E. 36, establish specific personal jurisdiction over any Defendant. As noted, the FAC makes one allegation concerning New Jersey, which is that Plaintiff OLG's principal place of business is in the state. Badcock's declaration merely reiterates that OLG's principal place of business is in New Jersey. Neither the FAC nor the declaration allege any facts from which the Court could reasonably infer that any of the Defendants expressly aimed their conduct at New Jersey. Similarly, neither the FAC nor the Declaration allege any facts from which the Court could reasonably infer that any Defendant purposefully directed its/his activities at the forum, much less that the litigation arose out of, or related to, at least one of those activities. In addition, because Plaintiff has not alleged with reasonable particularity the possible existence of necessary contacts between Defendants and New Jersey, the Court does not grant jurisdictional discovery. *See Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 157 (3d Cir. 2010).

For the foregoing reasons, the Court grants Defendants' motions to dismiss for lack of personal jurisdiction. If this were the only issue presented, the Court would dismiss without prejudice and permit Plaintiffs to file another amended complaint. However, for the reasons that follow, the Court further finds that venue is inappropriate in this District and that a dismissal with prejudice is warranted.

### B. **Venue**

Federal Civil Rule of Procedure 12(b)(3) permits a motion to be dismiss for improper venue. 28 U.S.C. § 1391(b) provides that a civil action may be brought in

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> (2) a judicial district in *which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated*; or

> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b)(1)-(3) (emphasis added).

The "defendant[s]…bear the burden of showing improper venue." *Myers v. Am. Dental Ass'n*, 695 F.2d 716, 724-25 (3d Cir. 1982). When deciding a motion for improper venue, the Court "accepts the plaintiffs['] well-pled allegations regarding venue as true,…draws all reasonable inferences from those allegations in the plaintiffs['] favor, and…resolves any factual conflicts in the plaintiffs['] favor…." *Shah v. Centurum, Inc.*, 2011 WL 1527334, at *2 (D.N.J. Apr. 20, 2011) (quoting *Quarles v. Gen. Inv. & Dev. Co.*, 260 F. Supp. 2d 1, 8 (D.D.C. 2003)) (internal quotation marks omitted). "A court need not accept the plaintiff's well-pled factual allegations when they are contradicted by the defendant's affidavits." *Id.* (citing *AGA Shareholders, LLC v. CSK Auto, Inc.*, 467 F. Supp. 2d 834, 842 (N.D. Ill. 2006)). A court can go beyond the pleadings and "examine facts outside the complaint to determine whether its venue is proper." *Id.* (quoting 5B C. Wright & A. Miller, Federal Practice and Procedure § 1352, at 324 (3d ed. 2004)) (internal quotation marks omitted).

Here, no Defendant resides in the District of New Jersey, so § 1391(b)(1) is inapplicable. In light of the Court's analysis of personal jurisdiction above, § 1391(b)(3) is not met as currently pled. As a result, the Court analyzes § 1391(b)(2), which requires that either "a substantial part of the events or omissions giving rise to the claim occurred" in the District of New Jersey, or a substantial part of property that is the subject of the action is situated" in this District.

In reviewing the relevant analysis pursuant to § 1391(b)(2), the Third Circuit has observed as follows:

In *Cottman Transmission Systems, Inc. v. Martino*, we held that, in determining whether a substantial part of the events or omissions giving rise to a cause of action occurred in a specific jurisdiction, "[t]he test ... is not the defendant's contacts' with a particular district, but rather the location of those events or omissions giving rise to the claim.'" 36 F.3d 291, 294 (3d Cir.1994). In addition, we explained that "[i]n assessing whether events or omissions giving rise to the [plaintiff's] claims are substantial, it is necessary to look at the nature of the dispute." *Id.* at 295. Moreover, we observed that the venue provision "favors the defendant in a venue dispute by requiring that the events or omissions supporting a claim be substantial,'" *id.* at 294, and that "[s]ubstantiality is intended to preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute," *id.*; *see Leroy v. Great W. United Corp.,* 443 U.S. 173, 183–84, (1979) (noting that the purpose of the venue provision is "to protect the defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial").

*Bockman v. First American Marketing Group*, 2012 WL 171972, at \*3 (3d Cir. 2012).

Here, Defendants have demonstrated that venue is the District of New Jersey is improper. As Defendants correctly note, in the Indiana Federal Action, two of the current Plaintiffs, OLG and Highland, not only filed the action in the Southern District of Indiana, they also expressly alleged that a substantial part of the events or omissions that gave rise to their claims occurred there. Apart from a few new factual allegations, as discussed below, the FAC makes substantially similar claims to those in the Indiana Federal Action. Indeed, a review of the FAC makes clear that nearly all of the relevant acts occurred in Indiana. As noted, except for an indication that OLG's principal place of business is in New Jersey, Plaintiffs make no allegation that any acts or omissions occurred in New Jersey, much less a substantial number of events or omissions.

Having determined that venue is improper, the Court turns to 28 U.S.C. § 1406, which provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district

or division in which it could have been brought." In light of Defendants' arguments concerning claim preclusion, discussed below, the Court concludes that dismissal is appropriate.

### C. **Claim Preclusion**

Federal Civil Rule of Procedure 12(b)(6) permits a motion to dismiss for "failure to state a claim upon which relief can be granted." Claim preclusion, or *res judicata*, is an appropriate ground on which to dismiss a complaint under Rule 12(b)(6). *See Walzer v. Muriel, Siebert & Co., Inc.*, 221 F. App'x 153, 155 (3d Cir. 2007); *see also Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 961 n. 1 (3d Cir. 1991). Claim preclusion may be raised and adjudicated on a motion to dismiss, and the court can take notice of all facts necessary for the decision. *Connelly Found. v. Sch. Dist. of Haverford Twp.*, 461 F.2d 495, 496 (3d Cir. 1972) (per curiam). Moreover, "a court may take judicial notice of the record from a previous court proceeding between the parties." *Conceicao v. Nat'l Water Main Cleaning Co.*, 650 F. App'x 134, 135 (3d Cir. 2016) (citation omitted).

### 1. Indiana Federal Action

Defendants, except for the Plocher Defendants, argue that Plaintiffs' current claims are barred by claim preclusion in light of the Indiana Federal Action. Plaintiffs argue that the current matter is not barred due to claim preclusion. D.E. 35 at 20. However, they misstate some of the claim preclusion requirements and confuse claim preclusion with issue preclusion, or collateral estoppel.

When deciding a motion based on preclusion in a diversity case, a court applies the state claim preclusion law of the first forum, here Indiana. *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001).[4] Indiana law provides that "[c]laim preclusion applies where a final

---

[4] In *Semtek*, the United States Supreme Court noted that state law of claim preclusion would not apply if it was incompatible "with federal interests." 531 U.S. at 508. No such conflict is present here.

judgment on the merits has been rendered and acts as a complete bar to a subsequent action on the same issue or claim between those parties and their privies." *Afolabi v. Atl. Mortg. & Inv. Corp.*, 849 N.E.2d 1170, 1173 (Ind. Ct. App. 2006). "When claim preclusion applies, all matters that were *or might have been* litigated are deemed conclusively decided by the judgment in the prior action." *Id.* (emphasis added). In other words, under Indiana state law, to invoke claim preclusion, four requirements must be met:

> (1) the former judgment must have been rendered by a court of competent jurisdiction; (2) the former judgment must have been rendered on the merits; (3) the matter now in issue was, or could have been, determined in the prior action; and (4) the controversy adjudicated in the former action must have been between the parties to the present suit or their privies.

*First Am. Title Ins. Co. v. Robertson*, 65 N.E.3d 1045, 1050 (Ind. Ct. App. 2016).

Plaintiffs' claims as to Defendants, except the Plocher Defendants, are barred by claim preclusion because of the Indiana Federal Action. As to the Terre Haute and the THDC Defendants, all four requirements are met. First, the District Court for the Southern District of Indiana is a court of competent jurisdiction. Second, because the counts against the Terre Haute and THDC Defendants were dismissed with prejudice, the Indiana Federal Action judgment was rendered on the merits. *See Highland TH, LLC*, 2016 WL 2866052. "In Indiana, it is well settled that a dismissal with prejudice is a dismissal on the merits, and as such, it is conclusive of the rights of the parties and *res judicata* as to the questions that might have been litigated." *Mounts v. Evansville Redevelopment Comm'n*, 831 N.E.2d 784, 791 (Ind. Ct. App. 2005) (emphasis added); *see also Robertson*, 65 N.E.3d at 1050 ("[A] dismissal with prejudice is conclusive of the rights of the parties and is *res judicata* as to any questions that might have been litigated.").

Third, the issues were, or could have been, raised in the Indiana Federal Action. The underlying factual allegations in each case are substantially similar, save a few new allegations in

the current matter. However, the only new factual allegation in the current matter which could not have been raised in the Indiana Federal Action concern an investigation by the Federal Bureau of Investigation and Thompson's suicide.[5] Plaintiffs do not provide any analysis as to how these new allegations change the claim preclusion analysis. Plaintiffs also allege here that the Plocher Defendants made political contributions to Mayor Bennett in 2012, but Plaintiffs fail to address why they could not have discovered this information through the exercise of reasonable diligence before filing the Indiana Federal Action. The contribution was made years *before* the Indiana Federal Action was filed. Both the Indiana Federal Action and this matter are based on the same underlying factual allegations concerning the Agreement, the Assignment, the Plocher Contract, and all related activities.[6] Plaintiffs also raised fraud and tortious interference claims in the Indiana Federal Action as they do in the current case.

Fourth, both the current matter and the Indiana Federal Action involved the same parties or their privies. The following parties are exactly the same: Plaintiffs OLG and Highland; Defendants Terre Haute, Terre Haute Wastewater Utilities, Terre Haute Board, THDC, and Plocher. The following parties are new to this action: Plaintiff Badcock; Defendants Sodrel and S. Plocher. "The term privity describes the relationship between persons who are parties to an

---

[5] An example of a new allegation in the current case, which could have been raised in the Indiana Federal Action, is Plaintiff's claim concerning the bribery request in November 2014. Plaintiffs were obviously aware of this allegation because the request was made to Badcock, and it occurred well before the Indiana Federal Action was filed. Indeed, it occurred before Badcock nevertheless decided to go forward with the transaction that underly both this case and the Indiana Federal Action.

[6] For example, in the Indiana Federal Action amended complaint, Plaintiffs included allegations that the Terre Haute Defendants misrepresented having sufficient funds to perform the Agreement (including having numerous other municipalities on board as a funding source), that the Plocher Defendants improperly took and sold some of Plaintiffs' equipment from the de-watering facility, and that THDC made the $750,000 payment to Terre Haute. These allegations mirror the factual claims in the current matter.

action and those who are not parties to an action but whose interests in the action are such that they may nevertheless be bound by the judgment in that action." *MicroVote Gen. Corp. v. Ind. Election Comm'n*, 924 N.E.2d 184, 196 (Ind. Ct. App. 2010). "[A] 'privy' is one who after rendition of the judgment has acquired an interest in the subject matter affected by the judgment." *Id.* (quoting *Smith v. Midwest Mutual Insurance Co.*, 289 N.E.2d 788, 793 (1972)). "[I]n determining the parties for *res judicata* purposes, this court looks beyond the nominal parties and treats those whose interest are involved as the real parties." *Id.* Plaintiffs offer no argument in regards to the parties in the current action not being in privity with the parties in the Indiana Federal Action. Nor could the Court find any precedent indicating that the parties are not in privity. For example, in *Towle v. Boeing Airplane Co.*, 364 F.2d 590, 593 (8th Cir. 1966), the Eight Circuit found privity between the appellants and the company that was involved in the prior trial, since they were closely connected "as controlling stockholders, directors and officers of [the corporation]." Indiana law provides that persons who have the right to control a prior action, although not a party, stand in privity to the party in the prior action. *Thrasher, Buschmann & Voelkel, P.C. v. Adpoint Inc.*, 24 N.E.3d 487, 495 (Ind. Ct. App. 2015); *see also Bartle v. Health Quest Realty VII*, 768 N.E.2d 912 (Ind. Ct. App. 2002) (stating that the term privity "includes those who control an action, though not a party to it, and those whose interest are represented by a party to the action") (citation omitted).

Plaintiff Badcock, while not a named plaintiff in the Indiana Federal Action, is in privity with OLG for claim preclusion purposes because he is OLG's President and CEO and was so during the Indiana Federal Action. Similarly, Defendant Sodrel was not a named defendant in the Indiana Federal Action, but he in in privity with THDC. Sodrel is in privity with THDC because he owns and controls THDC and he is also THDC's sole member and was so during the Indiana

Federal Action. Therefore, Badcock and Sodrel are in privity with their respective companies for purposes of claim preclusion.

For the foregoing reasons, Plaintiffs' current claims against the Terre Haute Defendants and the THDC Defendants are barred by claim preclusion due to the Indiana Federal Action.

2.  Missouri Arbitration and Subsequent Federal Court Judgment

The Plocher Defendants argue that claim preclusion also bars Plaintiffs current claims against them. As noted, on May 25, 2017, Judge Ross in the Eastern District of Missouri confirmed the underlying arbitration award in its entirety in an Amended Judgment in *Plocher Construction Company, Inc. v. Overseas Lease Group, Inc.* D.E. 9-4. "Once an arbitration decision has been confirmed by a district court, it is entitled to the same preclusive effect as would be given a decision of that court." *Hybert v. Shearson Lehman/American Exp. Inc.*, 688 F. Supp. 320, 325 (N.D. Ill. 1988) (citing *Restatement (Second) of Judgments*, § 84(1) (1982)). Moreover, the Eastern District of Missouri action was predicated on diversity of citizenship. D.E. 9-10 at 2. Therefore, the preclusive effect on the judgement is governed by the law of Missouri. *See Semtek Int'l Inc*, 531 U.S. at 508.

Under Missouri state law, claim preclusion applies when four elements are present from a prior litigation: "(1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of the persons and parties to the action; and (4) identity of the quality of the person for or against whom the claim is made." *Roy v. MBW Constr., Inc.*, 489 S.W.3d 299, 304 (Mo. Ct. App. 2016). Moreover, "*[r]es judicata*, or claim preclusion, prohibits a party from bringing any previously-litigated claim and any claim that, with the exercise of reasonable diligence, should have been brought in that prior suit." *Kesler v. Curators of Univ. of Mo.*, 516 S.W.3d 884, 890 (Mo. App. W.D. 2017) (emphasis added); *see also Chesterfield Village, Inc. v. City of Chesterfield*, 64 S.W.3d

315, 318 (Mo. Sup. Ct. 2002) (*en banc*) (observing that claim preclusion applies to claims that could have been raised in the first action). In addition, Missouri also applies claim preclusion to the same parties in the first matter and "those in privity with them." *Roy*, 489 S.W.3d at 304 (internal quotation marks and citation omitted).

Here, the identity of the thing sued for is present in both actions, that is monetary damages related to the Plocher Contract, including the alleged improper selling of Plaintiff's equipment. Second, the identity of the cause of action is present in both actions, Plaintiffs counterclaimed in the arbitration for tortious interference, and its counterclaim was adjudicated. To the extent Plaintiffs attempt to recast their claims against the Plocher Defendants in the current matter, the "claims arose out of the same act, contract, or transaction[,]" *Roy*, 489 S.W.3d at 304, as litigated in the arbitration. Not only were Plaintiffs able to litigate their tortious interference counterclaims in the arbitration, they have presented no argument (much less evidence) that they were prohibited from raising all relevant claims in that matter. Third, the parties here were either the same as those in the Missouri arbitration or in privity with those parties. *See id.* (finding that being the president and shareholder of a company deemed it in privity with the company). S. Plocher is in privity with Plocher because he is the president and owner of Plocher and was so during the Indiana Federal Action, the Missouri arbitration, and the Missouri confirmation action. Fourth, the identity of the quality of the person for or against whom the claim is made was satisfied in that Plocher was sued in both cases. *See id.* (finding that the fourth element was "easily satisfied" when corporate defendant was sued in both cases). Therefore, under Missouri law, Plaintiffs current matter is subject to claim preclusion as to the Plocher Defendants.[7]

---

[7] If Plaintiff disagreed with the arbitration award, they had recourse under the Federal Arbitration Act ("FAA"). Section 12 of the FAA requires that a "[n]otice of a motion to vacate, modify, or correct an arbitration award be served upon the adverse party or his attorney within three months

### D. New Jersey Fraud Consumer Act

Although the Court has already determined that this matter should be dismissed for the foregoing reasons,[8] it will also address Plaintiffs' New Jersey Fraud Consumer Act ("NJCFA") count. Plaintiffs argue that that the conduct of all the Defendants violated the NJCFA, entitling Plaintiffs to at least $261 million in damages. The NJCFA prohibits "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise or real estate." N.J.S.A. 56:8-2. A claim under the NJCFA requires the following: "(1) an unlawful practice; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendant's unlawful conduct and the plaintiff's ascertainable loss." *Dabush v. Mercedes-Benz USA, LLC*, 378 N.J. Super. 105, 114 (App. Div. 2005).

---

after the award is filed or delivered." 9 U.S.C. § 12. Similarly, "[u]nder Missouri law, a suit to vacate an arbitration award must be filed within ninety days, Mo. Rev. Stat. § 435.405.2, whereas a suit to confirm the award is subject to Missouri's five-year statute of limitations for breach of contract actions, Mo. Rev. Stat. § 516.120." *Turner v. United Steelworkers of Am.*, Local 812, 581 F.3d 672, 675-76 (8th Cir. 2009). In *Domino Grp., Inc. v. Charlie Parker Mem'l Found.*, the Eight Circuit held that the "failure to file a motion to vacate, modify, or correct within three months of either the initial award or the Clarification of Award waived any defenses to confirmation that might be asserted in a timely motion to vacate." 985 F.2d 417, 419 (8th Cir. 1993) (citation omitted). If Plaintiffs had wanted to challenge the arbitration award, they could have done so under the FAA with a timely objection. *See Piccolo v. Dain, Kalman & Quail, Inc.*, 641 F.2d 598, 600 (8th Cir. 1981) ("A party to an arbitration award who fails to comply with the statutory precondition of timely service of notice forfeits the right to judicial review of the award."); *see also Sanders-Midwest, Inc. v. Midwest Pipe Fabricators, Inc.*, 857 F.2d 1235, 1238 (8th Cir. 1988) ("No exceptions to the time for service of notice appear in the Federal Act...."). Plaintiffs did not do so.

[8] The Court also agrees with the THDC Defendants that *no* plausible claims were asserted against it given the paucity of allegations in the FAC.

"[M]ere puffery does not constitute consumer fraud . . . [and] [m]inor disagreements between consumer and business owner over quality of customer service, timing of service, or increased price is not consumer fraud." *Turf Lawnmower Repair, Inc. v. Bergen Record Corp.*, 139 N.J. 392, 416 (1995). Rather, to rise to the level of consumer fraud, "the business practice in question must be 'misleading' and stand outside the norm of reasonable business practice in that it will victimize the average consumer." *Id.* Additionally, the term "ascertainable loss" means that a "plaintiff must suffer a definite, certain, and measurable loss, rather than one that is merely theoretical." *Heyert v. Taddese*, 431 N.J. Super. 388, 417 (App. Div. 2013). Indeed, "the certainty implicit in the concept of an 'ascertainable' loss is that it is quantifiable or measurable." *Thiedemann v. Mercedes-Benz USA, LLC*, 183 N.J. 234, 248 (2005). Finally, "[c]laims of common law fraud and consumer fraud under New Jersey law are held to the higher pleading standard of Rule 9(b)." *Schiano v. MBNA*, No. 05-1771, 2014 WL 1430034, at *5 (D.N.J. Apr. 9, 2014). Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The Third Circuit has interpreted this Rule to require plaintiffs to "plead 'the who, what, when, where, and how: the first paragraph of any newspaper story.'" *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 534 (3d Cir. 1999).

Plaintiffs' NJCFA count is deficient. Plaintiffs are not consumers and the subject transaction does not involve the sale of merchandise or real property. "The entire thrust of the Act is 'pointed to products and services sold to consumers in the popular sense.'" *BOC Grp., Inc. v. Lummus Crest, Inc.*, 251 N.J. Super. 271, 278 (Law. Div. 1990) (quoting *Neveroski v. Blair*, 141 N.J. Super. 365, 378 (App.Div.1976)). "[A]lthough the Consumer Fraud Act does not define the term 'consumer' or contain an explicit 'retail restriction,' it was intended to protect persons

engaging in 'consumer' transactions, not those acquiring businesses." *J & R Ice Cream Corp. v. California Smoothie Licensing Corp.*, 31 F.3d 1259, 1272 (3d Cir. 1994). "A 'consumer' is generally defined as 'one who uses (economic) goods, and so diminishes or destroys their utilities.'" *Stockroom, Inc. v. Dydacomp Dev. Corp.*, 941 F. Supp. 2d 537, 544 (D.N.J. 2013) (quoting *Hundred East Credit Corp. v. Eric Shuster Corp.*, 212 N.J. Super. 350, 355 (App. Div. 1986)). "The term 'merchandise' shall include any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale[.]" N.J.S.A. § 56.8-1(c). "'[T]he public,' as used in this definition of 'merchandise,' refers to 'the public at large.'" *Princeton Healthcare Sys. v. Netsmart New York, Inc.*, 422 N.J. Super. 467, 473 (App. Div. 2011) (quoting *Finderne Mgmt. Co. v. Barrett*, 402 N.J. Super. 546, 570 (App. Div. 2008)).

*BOC Grp., Inc.*, 251 N.J. Super. 271, is instructive. There, the court dismissed the NJCFA claim because it involved a corporation's claim against another corporation related to the design for a manufacturing plant:

> The complex petroleum refining process at issue is not a service, nor is it merchandise under N.J.S.A. 56:8–1(c). What was sold to the plaintiff was an idea. [Defendant] did not sell a service but a design…. Even if the court were to find that this new experimental process was a service sold to plaintiff, the process was certainly not the type of service contemplated by the [NJCFA], nor was it sold or capable of being sold 'to the public.'

51 N.J. Super. at 278.

Here, Plaintiffs fail to plausibly plead that they were "consumers" or that the underlying transaction concerned "merchandise," as those terms are used in the NJCFA context. Instead, Plaintiffs allege a complex commercial transaction involving sophisticated parties concerning an agreement to supply sludge so that it could be transformed into diesel fuel. Plaintiffs fail to plausibly plead a valid NJCFA claim.

### III.    CONCLUSION

For the reasons stated above, Defendants' Motions to Dismiss is **GRANTED** and the matter is **DISMISSED with prejudice**.  An appropriate Order accompanies this opinion.

Dated: November 27, 2018

John Michael Vazquez, U.S.D.J.